**AKIN GUMP STRAUSS HAUER & FELD LLP**
VICTOR A. SALCEDO (SBN 317910)
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
vsalcedo@akingump.com
Telephone:  (310) 229-1000
Facsimile:  (310) 229-1001

Attorney for Defendants
NATIONAL FOOTBALL LEAGUE and
THE LOS ANGELES CHARGERS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| AARON PATRICK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE, a business entity; STADCO LA, LLC d/b/a SOFI STADIUM, a business entity; HOLLYWOOD PARK LAND COMPANY, LLC, a business entity; STOCKBRIDGE CAPITAL GROUP, LLC, a business entity; THE FLESHER GROUP, a business entity; KROENKE SPORTS & ENTERTAINMENT COMPANY, a business entity; CHARGERS FOOTBALL COMPANY, LLC d/b/a THE LOS ANGELES CHARGERS, a business entity; MOE "GREENHAT," an individual; ESPN, INC., a business entity; ROE MAT COMPANY, a business entity; and DOES 1-40, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-01069-DMG (SHKx)<br><br>District Judge: Hon. Dolly M. Gee<br>Magistrate Judge: Shashi H. Kewalramani<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES<br>[F.R.C.P. 12(B)(6)]**<br><br>[Filed concurrently with Declaration of Victor Salcedo, Request for Judicial Notice, and [Proposed] Order]<br><br>Courtroom:    8C, 8th Floor<br>Date:    March 31, 2023<br>Time:    9:30 a.m.<br><br>Date Removal Filed: February 13, 2023<br>Date Action Filed: November 15, 2022 |

**TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on March 31, 2023, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8C, 8th Floor, of the above entitled Court, located at 350 West 1st Street, Los Angeles, CA, 90012, before the Honorable Dolly M. Gee, Defendants National Football League ("NFL") and Los Angeles Chargers ("Chargers") will, and hereby do, move the Court for an order dismissing the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based upon this notice of motion and motion, the concurrently filed Memorandum of Points and Authorities, the declaration of Victor A. Salcedo, and the Request for Judicial Notice; the pleadings, records and papers on file with the Court; and on any such further or other matters the Court deems proper at the hearing on this motion.

This motion is made following the conference with counsel pursuant to L.R. 7-3 which took place on February 13, 2023, and February 15, 2023. *See* Declaration of Victor Salcedo, ¶ 2.


Dated:  February 21, 2023          AKIN GUMP STRAUSS HAUER & FELD LLP


                                   By:    */s/ Victor A. Salcedo*
                                          Victor A. Salcedo
                                          Attorney for Defendants
                                          NATIONAL FOOTBALL LEAGUE and
                                          THE LOS ANGELES CHARGERS

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND .................................................................................................3

    A.    Patrick's Claims Against the NFL and the Chargers .................................3

    B.    The Collective Bargaining Agreement......................................................4

        1.    CBA Provisions Regarding Player Safety and Protection from Injury ....................................................................................................5

        2.    CBA Provisions Governing Players' Rights to Compensation and Benefits in the Event of Injury...........................................................8

        3.    The CBA's "No-Suit" and Mandatory Arbitration Provisions...........8

III.   ARGUMENT.......................................................................................................9

    A.    Patrick's Claims Against the NFL and the Chargers Are Preempted By the LMRA...................................................................................................9

        1.    Any Duty Allegedly Owed to Patrick Regarding the Safety of the Playing Field Exists, If at All, By Virtue of the CBA .....................11

        2.    Patrick's Claims Against the NFL and the Chargers Are "Substantially Dependent" on an Analysis of the CBA ..................12

        3.    Patrick's Alleged Damages Resulting From His Injury Are Inextricably Intertwined With The Terms Of The CBA. .................16

    B.    Patrick's Failure to Exhaust Mandatory CBA Grievance Procedures Independently Requires Dismissal ...........................................................17

IV.   CONCLUSION.................................................................................................19

# TABEL OF AUTHORITIES

**Page(s)**

**Cases**

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ..................................................................*passim*

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) .............................................................................18

*Ballard v. Nat'l Football League Players Ass'n*,
  123 F. Supp. 3d 1161 (E.D. Mo. 2015) ...............................................4, 12

*Boldt v. N. States Power Co.*,
  904 F.3d 586 (8th Cir. 2018) ....................................................................4

*Boogaard v. Nat'l Hockey League*,
  126 F. Supp. 3d 1010 (N.D. Ill. 2015) .....................................................18

*Brown v. Brotman Med. Ctr., Inc.*,
  571 F. App'x 572 (9th Cir. 2014) .............................................................13

*Bush v. St. Louis Regional Convention and Sports Complex Authority, et al.*,
  No. 4:16CV250JCH, 2016 WL 3125869 (E.D. Mo. June 3, 2016) .....................15, 16

*Carr v. Pac. Mar. Ass'n*,
  904 F.2d 1313 (9th Cir. 1990) .................................................................18

*Connelly v. Mammoth Mtn. Ski Area*,
  39 Cal. App. 4th 8 (1995) .......................................................................11

*Corales v. Bennett*,
  567 F.3d 554 (9th Cir. 2009) ...................................................................11

*Cramer v. Consol. Frwys., Inc.*,
  255 F.3d 683 (9th Cir. 2001) ...................................................................10

*Crosby v. Cooper B-Line, Inc.*,
  725 F.3d 795 (7th Cir. 2013) ...................................................................10

*Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*,
  952 F.2d 1073 (9th Cir. 1991) .................................................................18

*Duerson v. Nat'l Football League, Inc.*,
  No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ....................................14

*Espinal v. Nw. Airlines*,
    90 F.3d 1452 (9th Cir. 1996) ...........................................................................17

*Espinoza v. Cargill Meat Solutions Corp.*,
    622 F.3d 432 (5th Cir. 2010) ............................................................................17

*Ford v. Gouin*,
    3 Cal. 4th 339 (1992) .......................................................................................11

*Fortier v. Los Rios Cmty. Coll. Dist.*,
    45 Cal. App. 4th 430 (1996) ............................................................................11

*Gunter v Arizona Cardinals Football Club LLC, et al.*,
    No. CV2021-015026 (Ariz. Sup. Ct. 2021).....................................................15

*Hendrix v. KTLA, LLC*,
    No. CV 20-3520 DMG, 2021 WL 3051979 (C.D. Cal. Jan. 3, 2021).........................10

*Hyles v. Mensing*,
    849 F.2d 1213 (9th Cir. 1988) .....................................................................2, 10

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*,
    481 U.S. 851 (1987)..........................................................................................12

*Jeffers v. D'Allessandro*,
    681 S.E.2d 405 (N.C. Ct. App. 2009)..............................................................18

*Johnson v. Fed. Home Loan Mortg. Corp.*,
    793 F.3d 1005 (9th Cir. 2015) ...........................................................................4

*Johnson v. Sky Chefs, Inc.*,
    No. 11-CV-05619-LHK, 2012 WL 4483225 (N.D. Cal. Sept. 27, 2012) ....................4

*Jones v. Awad*,
    39 Cal. App. 5th 1200 (2019) ..........................................................................11

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988)............................................................................................9

*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*,
    369 U.S. 95 (1962)..............................................................................................9

*Matthews v. Nat'l Football League Mgmt. Council*,
    688 F.3d 1107 (9th Cir. 2012) .........................................................................17

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [F.R.C.P. 12(B)(6)]

*Maxwell v. Nat'l Football League*,
 No. CV 11-08394, ECF No. 58, slip op. (C.D. Cal. Dec. 8, 2011) ...........................15

*Mehr v. FIFA*,
 115 F. Supp. 3d 1035 (N.D. Cal. 2015) ......................................................................11

*Miles v. Nat'l Football League*,
 No. 2:19-cv-18327(JXN)(JSA), 2022 WL 17129225 ..................................................15

*Navarro v. Excel Corp.*,
 48 F. App'x 481, 2002 WL 31049478 (5th Cir. 2002) ................................................17

*O'Donoghue v. Bear Mountain Ski Resort*,
 30 Cal. App. 4th 188 (1994) .......................................................................................11

*Pantazis v. Fior D'Italia, Inc.*,
 No. C 94-1094-FMS, 1994 WL 519469 (N.D. Cal. Sept. 20, 1994) ..........................12

*Shane v. Greyhound Lines, Inc.*,
 868 F.2d 1057 (9th Cir. 1989) ....................................................................................10

*Smith v. Nat'l Football League Players Ass'n*,
 No. 4:14-CV-01559, 2014 WL 6776306 (E.D. Mo. Dec. 2, 2014)........................12, 14

*Stringer v. Nat'l Football League*,
 474 F. Supp. 2d 894 (S.D. Ohio 2007) ........................................................................14

*United Steelworkers of Am., AFL-CIO-CLC v. Rawson*,
 495 U.S. 362 (1990)......................................................................................................12

*Williams v. Nat'l Football League*,
 582 F.3d 863 (8th Cir. 2009) ................................................................................12, 14

*Young v. Anthony's Fish Grottos, Inc.*,
 830 F.2d 993 (9th Cir. 1987) .........................................................................................9

**Statutes**

Labor Management Relations Act, 29 U.S.C. § 185 ..............................................................1

Labor Management Relations Act, 29 U.S.C. § 301 .................................................*passim*

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES [F.R.C.P. 12(B)(6)]

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

Plaintiff Aaron Patrick, a professional football player for the Denver Broncos, filed this action seeking damages for a playing injury he suffered during a game against the Los Angeles Chargers at SoFi Stadium.  Patrick claims that his injury, which occurred while he attempted to make a tackle, was caused by the negligent maintenance of the area adjacent to the playing field that he alleges was the responsibility of the NFL, the Chargers, and other Defendants that operate or are associated with SoFi Stadium.  In his Amended Complaint, Patrick asserts two causes of action: (1) negligence against the NFL, Chargers, and other Defendants; and (2) premises liability against several Defendants (including the Chargers), but not the NFL.  This motion seeks dismissal of all claims against the NFL and the Chargers on the ground that they are preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

As a player in the NFL, Patrick's employment with the Broncos is governed by a Collective Bargaining Agreement ("CBA") between the National Football League Players Association ("NFLPA"), the exclusive collective bargaining representative of all NFL players, and the NFL Management Council ("NFLMC"), the bargaining representative of the NFL and its 32 member Clubs.  Through the CBA, the NFLPA and the NFLMC have negotiated extensively over their respective duties and responsibilities in promoting player safety and protecting players against injury, as well as the rights of players to a range of compensation and benefits in the event that they are injured while performing services under their contracts, including while playing in a game.  Particularly relevant here, the CBA specifically sets forth joint union and management responsibilities with respect to the condition of the playing field and its surrounding areas.  These CBA provisions include, among other things, detailed *mandatory* practices for maintaining and inspecting the playing areas that are required to be followed at every NFL stadium for each game, and a specific and exclusive grievance and arbitration procedure for resolving any disputes over the safety of the field.

In light of the CBA that governs Patrick's claims regarding his playing injury, this lawsuit never should have been filed. It is well-settled that state law claims like those asserted here, which arise from or require interpretation of a labor contract, are preempted by the LMRA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985) (state law claims that are "inextricably intertwined" with the terms of a CBA are preempted). That is true regardless of Patrick's effort to avoid mentioning the CBA and its mandatory arbitration procedures, because a plaintiff may not avoid the preemptive force of the LMRA by strategically omitting "any direct reference to the collective bargaining agreement that controlled his employment[.]" *Hyles v. Mensing*, 849 F.2d 1213, 1214 (9th Cir. 1988).

Resolution of Patrick's state law claims against the NFL and the Chargers plainly would require interpretation of the CBA. In particular, Patrick's claims require that he prove that the NFL and the Chargers owed him a duty to protect him from, and provide him with compensation for, his alleged playing injury, and that they breached that duty. But resolving the nature and scope of any such duties cannot be resolved without interpreting myriad provisions of the CBA that specifically and extensively address the parties' responsibilities for promoting and protecting player safety—including regarding the maintenance of the playing field and surrounding areas—and to provide players like Patrick with compensation and benefits when they are injured. Indeed, as explained below, numerous courts have not hesitated to dismiss similar claims by NFL players and other professional athletes on labor preemption grounds.

Accordingly, because resolution of Patrick's claims would require interpretation of the governing CBA, and any dispute regarding his entitlement to compensation for his playing injury are subject to resolution exclusively through the CBA's arbitration procedures, his claims against the NFL and the Chargers should be dismissed.

///

///

///

## II.    BACKGROUND

### A.    Patrick's Claims Against the NFL and the Chargers

Patrick is a professional football player employed by the Denver Broncos, a member Club of the NFL.  Dkt. 1-3 ("Am. Compl.") ¶1.  Defendant NFL is an association of 32 member Clubs that promotes, organizes, and regulates the sport of professional football in the United States. Am. Compl.  ¶2. Defendant Los Angeles Chargers is a member Club of the NFL that plays its home games at SoFi Stadium in Los Angeles, California.  *Id.*[1]

Patrick alleges that he was injured when he "attempted to make a tackle" during a game between the Broncos and the Chargers on October 17, 2022 at SoFi Stadium.  *Id* ¶¶1, 15, 17.  Specifically, Patrick claims that he tore his Anterior Cruciate Ligament when his "momentum carried him off the field and beyond the sidelines where, while attempting to avoid contact" with the NFL's TV liaison, his "left foot stepped onto the mats and/or cords/cables and fell awkwardly." *Id.* ¶1.  Patrick alleges that these "cords/cables" were connected to "the NFL's instant replay sideline monitor."  *Id.*

Patrick filed this action in California state court on November 15, 2022 against the NFL, the Chargers, and several other Defendants that operate or are associated with SoFi Stadium in Los Angeles, California.  Dkt. 1-2.  His original complaint alleged that he sustained injuries "while attempting to make a tackle . . . along the sideline." *Id.* ¶¶1, 15. He claimed the NFL and Chargers owed him a duty "to ensure there were no dangerous conditions that could affect the safety of . . . *the players.*" *Id.* ¶16 (italics added).  But, on January 3, 2023, Patrick filed the Amended Complaint alleging his injuries occurred

---

[1] In addition to the NFL and the Chargers, Patrick named as defendants Stadco LA, LLC, Hollywood Park Land Company, LLC, Stockbridge Capital Group, LLC, The Flesher Group and Kroenke Sports & Entertainment Company, which he alleges own, operate, or control SoFi Stadium. Am. Compl. ¶¶3-7.  Patrick also named as a defendant ESPN, Inc. which he alleges was "responsible for setting up the cords/cables and/or the mats that were placed along the sideline to feed power to the instant replay monitor on behalf of the NFL." *Id.* ¶10.  Finally, Patrick named as defendants a number of fictitious persons or entities, including "Moe" Greenhat, who he alleges "was working for the NFL in the role of TV Liaison to coordinate and administer commercial breaks" and "negligently ran directly into" his path. *Id.* ¶9.  Patrick has since voluntarily dismissed The Flesher Group from the action and added another entity, Pincay Re LLC. Dkt. 1-14, Dkt. 1-15.

1   "beyond and outside the sideline" "[i]mmediately following the play," and that the NFL,

2   Chargers, and other Defendants "fail[ed] to ensure safe conditions to all members of the

3   public."    Am. Compl. ¶¶2, 15, 22, 30.    As relevant here, the Amended Complaint

4   specifically alleges that the NFL and the Chargers breached a duty of care owed to Patrick

5   by "setting up the area outside of and adjacent to the playing field such that these areas

6   were unsafe," "running electrical cords/cables" across the sideline, "placing three mats

7   over" the cables, and failing to ensure its television liaison was "correctly positioned on

8   the sidelines." *Id.* ¶¶23, 30.

9       The NFL and the Chargers timely removed the case to this Court on the ground that

10  Patrick's state-law claims are completely preempted by the LMRA. *See* Dkt 1.

11      **B.    The Collective Bargaining Agreement**

12      At all relevant times, Patrick has been represented by the NFLPA, the exclusive

13  collective bargaining representative of all current and future NFL players.    Dkt 1-22

14  ("CBA"), Preamble.[2]    The NFL has designated the NFLMC as the collective bargaining

15  representative of all NFL member Clubs. *Id.*

16      The terms and conditions of Patrick's employment are governed by a CBA

17  negotiated by the NFLPA and the NFLMC. *Id.*    As explained below, the CBA and its

18  incorporated documents, including Patrick's NFL Player Contract, specifically and

19  extensively govern the relative rights and responsibilities of the NFL, its Clubs (including

20  _____

21  [2] In deciding this motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court may consider materials on which "the plaintiff's complaint necessarily relies[.]"

22  *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007-08 (9th Cir. 2015). That is especially true here, where the Amended Complaint "necessarily relies upon [the CBA] as the source of [the NFL and Chargers'] duty." *Id.*; *see also Allis-Chalmers*, 471 U.S. at

23  203-04 (considering benefits plan "incorporate[d] by reference" in CBA for purposes of LMRA preemption); *Boldt v. N. States Power Co.*, 904 F.3d 586, 590 (8th Cir. 2018)

24  (considering CBA and documents incorporated by reference, including fitness-for-duty policy, in determining whether claims were preempted for purposes of motion on the

25  pleadings); *Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1163 (E.D. Mo. 2015) (considering NFL CBAs in deciding a motion to dismiss former players'

26  tort claims as preempted).    In addition, "[c]ourts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of

27  preemption." *Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012). The CBA and its incorporated documents are attached

28  to the Declaration of Victor Salcedo, which was submitted in support of the NFL and the Chargers' Notice of Removal. *See* Dkt 1-1, 1-22 (CBA), 1-23 (Mandatory Practices).

the Chargers), the NFLPA, and the players with respect to the promotion of player health and safety, and the players' rights to medical care, compensation and other benefits in the event they are injured while performing services under their contracts. The CBA and Patrick's NFL Player Contract also provide for mandatory and exclusive arbitration, including specifically over claims involving the safety of the playing field and Patrick's entitlement to compensation and other benefits in the event of injury.

          1.   <u>CBA Provisions Regarding Player Safety and Protection from Injury</u>

Mindful of the possibility of injuries in the game of football, the NFLMC and the NFLPA have negotiated extensively over the promotion of player health and safety and protection of the players from injury. These CBA provisions set forth the duties and responsibilities of the NFL and its Clubs, and the NFLPA, in the area of player safety. For example, the parties to the CBA have established a joint Union-Management "Accountability and Care Committee" ("Care Committee") responsible for studying and developing standards of care regarding the prevention and treatment of player injuries. CBA, Art. 39, § 5. The Care Committee is comprised of the NFL Commissioner and the NFLPA Executive Director (or their designees) and three additional members who are "knowledgeable and experienced in field relevant to health care for professional athletes." *Id.*, Art. 39, § 5(a). "The Committee is charged with [a detailed list of] *responsibilities*" designed to study, prevent and protect players from injury. *Id.*, Art. 39, § 5(c)(i)-(xiii) (italics added). Those responsibilities include, among others, conducting "an annual comprehensive review of Club rehabilitation equipment, *facilities* and modalities," and "establish[ing] and implement[ing] *minimum standards* concerning these areas." *Id.*, Art. 39, § 5(x) (italics added).

Even more specifically , the NFLPA and the NFLMC established the joint Field Surface Safety & Performance Committee ("Joint Field Safety Committee") under Article 39 of the CBA "[i]n furtherance of [the] NFL and the NFLPA's ongoing efforts and express intention to enhance the safety and performance of NFL field surfaces and playing areas, and thereby advance the safety and protect the health of NFL players." *Id.*, Art. 39, § 11.

The Joint Field Safety Committee consists of two subject matter experts selected by each of the NFLPA and the NFLMC, the NFLPA Medical Director, and the NFL Chief Medical Officer. *Id.*, Art. 39, § 11(c). In addition, the parties have agreed "that the NFLPA Medical Director shall be a voting member of all NFL health and safety committees." *Id.*, Art. 39, § 3.

Critically important for purposes of Patrick's claims here, the Joint Field Safety Committee maintains responsibility under the CBA for establishing *mandatory* standards of care regarding the safety of the playing field and surrounding areas at every NFL stadium, including SoFi Stadium, with respect to:

> (i) injury prevention, (ii) improved field surface testing methods, (iii) the adoption of tools and techniques to evaluate and improve field surface performance/playability (e.g., metrics to gauge minimum softness; quantitative cover ratings; measuring head impact criteria), (iv) establish[ment] and implement[ation of] safety and performance testing metrics for NFL game-day and practice field surfaces, and (v) undertak[ing] such other duties as the Parties may assign.

*Id.*, Art. 39, § 11(a). Further, the Joint Field Safety Committee

> shall review the Mandatory Practices for the Maintenance of Natural and Synthetic Surfaces for NFL Games (the "Mandatory Practices") and the Mandatory Field Wall Padding and Non-Slip Surfaces Policy and agree upon improvements, as necessary. ***Every stadium in which an NFL game is to be played must be in compliance with the Committee's revised Mandatory Practices prior to the beginning each NFL season.*** The Committee will regularly review its mandatory and recommended practices and agree upon updates and improvements as necessary.

*Id.*, Art. 39, § 11(c) (italics added).

The Mandatory Practices in effect under the CBA at the time of Patrick's injury set forth detailed requirements designed to ensure the safety of the surface conditions both on

and off the field of play at each NFL stadium. *See* Dkt 1-23 (Mandatory Practices). These include "[t]he entire surface of the field that a player may be expected to interact with during play, *including both end zones and the sidelines*." *Id.* at 29 (italics added). For example, even surfaces "outside the media line" must "be non-slip when contacted by a cleated shoe," and, where necessary, covered "with a non-slip mat or other covering that will not move under foot when contacted by a player." *Id.* at 12. That includes areas outside the traditional field of play: the Mandatory Practices forbid "significant or abrupt change in grade from the playing surface" or "uncovered rigid surfaces"—"*anywhere* that a player could interact with them." *Id.* (italics added).

To ensure that the "field surface" is "free of any defects," the Mandatory Practices require visual inspection of

> the area surrounding the playing surface (including outside the boundary line) to the walls to make sure that all valve box and similar covers do not present a significant or abrupt change in grade from the playing surface and that all are covered securely with a pliable material in good condition that would provide reasonable traction to a cleated player.

*Id.* at 26. These inspections must occur prior to practices leading up to games. *Id.*

Finally, Article 39 also establishes the NFL Stadium Playing Area Inspection Program to

> test NFL playing and practice surfaces to ensure that they are in compliance with the Mandatory Practices (and the mandatory practices and metrics set forth by the Field Surface Safety & Performance Committee pursuant to this Section) and to ensure that every NFL Stadium is in compliance with the Mandatory Field Wall Padding and Non-Slip Surfaces Policy. To the extent any playing area is found to be out of compliance, that stadium field manager must initiate remedial measures in coordination with the NFL Football Operations Department. For field surfaces that are found to be out of compliance, the NFL will update the NFLPA's designee(s) regularly about the

remedial measures, including the scheduling of additional testing. CBA, Art. 39, § 11(d).

### 2. CBA Provisions Governing Players' Rights to Compensation and Benefits in the Event of Injury

The CBA and Patrick's NFL Player Contract specifically address the parties' rights and obligations regarding playing injuries when they occur. Among other provisions, the CBA provides players with detailed rights to medical and rehabilitative care from qualified professionals (CBA, Art. 39 ("Players' Rights to Medical Care and Treatment")); protection from the loss of salary for the duration of the injury during the season of injury (*id.*, App'x A, ¶9 ("NFL Player Contract")); extended salary protection following the season of injury for qualifying players (*id.*, Art. 45 ("Injury Protection")); workers compensation benefits (*id.*, Art. 41 ("Workers Compensation")); and numerous other injury-related benefits post-retirement (*id*, Art. 60 ("NFL Player Disability & Neurocognitive Benefit Plan"); (*id.*, Art. 53 ("Retirement Plan"); *id.*, Art. 55 ("Player Annuity Program"); *id.*, Art. 57 ("88 Benefit"); *id.*, Art. 58 ("Group Insurance"); *id.*, Art. 61 ("Long Term Care Insurance Plan"); *id.*, Art. 63 ("Former Player Life Improvement Plan")).

### 3. The CBA's "No-Suit" and Mandatory Arbitration Provisions

The NFLPA and the NFLMC have agreed that the CBA and its incorporated documents "represent[ ] the complete understanding of the parties on all subjects covered herein" (CBA, Art. 2, § 4), and that no member of the NFLPA will sue "the NFL or any Club with respect to any claim relating to any conduct permitted by [the CBA]" or "any term" of the CBA (*id.*, Art. 3, § 2). Instead, the CBA requires arbitration of "[a]ny dispute" involving "the interpretation of, application of, or compliance with, any provision of" the CBA, player contract, or any provision of the NFL Constitution and Bylaws. *Id.*, Art. 43, § 1.

The CBA's mandatory arbitration provisions include any dispute over the safety of the playing field and its surrounding areas. Thus, "[t]he parties hereby affirm that the

8

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [F.R.C.P. 12(B)(6)]

NFLPA and any player has the right to file a [grievance] for any alleged violation of this Article 39." *Id.*, Art. 39, § 21 ("Remedies"). More explicitly, in the event that "a player or the NFLPA allege that an NFL Stadium is not in compliance with the Mandatory Practices, as applicable, or any other metrics or standards set by the Field Surface Safety & Performance Committee . . . , the NFLPA shall have the right to commence" a grievance under the CBA's grievance and arbitration procedures. *Id.*, Art. 39, § 11 (d).

## III.  **ARGUMENT**

The Amended Complaint fails because the claims are preempted by the LMRA, and because they are subject to exclusive resolution under the CBA's arbitration procedures.

### A.   **Patrick's Claims Against the NFL and the Chargers Are Preempted By the LMRA**

The Supreme Court has consistently held that Section 301 of the LMRA "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 & n.3 (1988) (citations omitted). Congress enacted Section 301 precisely because "[t]he possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962).

To ensure this uniformity, Section 301 preempts state law claims where the claim is founded on rights created by a CBA, or where resolution of the claim substantially depends on the interpretation of or is "inextricably intertwined" with terms or provisions of a collective bargaining agreement. *Allis-Chalmers*, 471 U.S. at 213, 220; *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987) ("[R]ecasting[ ] contract claims as tort claims . . . would frustrate the federal interest in uniform federal interpretation of collective agreements, allowing 'parties to evade the requirements of § 301'" (quoting *Allis-Chalmers*, 471 U.S. at 211)). In other words, Section 301

preemption applies whenever adjudicating an element of the claim would "require[ ] a court to interpret any term of a collective-bargaining agreement." *Lingle*, 486 U.S. at 407; *accord Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1062 (9th Cir. 1989) (test is whether "the presence of the necessary elements of a state claim can be ascertained without recourse to interpretation of the CBA").

It is immaterial that a plaintiff does not plead a CBA violation in his complaint. "[T]o determine whether a purported state-law claim 'really' arises under Section 301, a federal court must look beyond the face of plaintiff's allegations and the labels used to describe her claims and . . . evaluate the substance of plaintiff's claims." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) (citation omitted). Nor may a plaintiff avoid the preemptive force of the LMRA by strategically omitting "any direct reference to the collective bargaining agreement that controlled his employment[.]" *Hyles v. Mensing*, 849 F.2d 1213, 1214 (9th Cir. 1988). Rather, the "plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer v. Consol. Frwys., Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).

As this Court has explained, "to determine whether a state law claim is preempted by section 301 of the LMRA, the Court must first consider whether the asserted cause of action involves a right conferred upon an employee by virtue of state law or the CBA." *Hendrix v. KTLA, LLC*, No. CV 20-3520 DMG (PJWx), 2021 WL 3051979, at *3 (C.D. Cal. Jan. 3, 2021) (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). "If the right exists 'solely as a result of the CBA,' the claim is preempted." *Id*. However, even if the Court concludes that the asserted claim exists independently of the CBA, it is nevertheless preempted if "it is 'substantially dependent on' analysis of the CBA." *Id*. (internal quotations omitted).

Here, Patrick's claims against the NFL and the Chargers are preempted both because they involve rights conferred, if at all, only by the CBA, and because they are plainly dependent on an analysis of the CBA.

///

1.    <u>Any Duty Allegedly Owed to Patrick Regarding the Safety of the Playing Field Exists, If at All, By Virtue of the CBA</u>

To prove his claims, Patrick must establish, among other elements, that the NFL and the Chargers had "a legal duty to use due care," that they "breach[ed] such legal duty," and that the breach was "the proximate or legal cause of the resulting injury." *Jones v. Awad*, 39 Cal. App. 5th 1200, 1207 (2019) (premises liability) (quoting *Beacon Residential Cmty. Ass'n v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014)); *accord Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (negligence).  Here, any "legal duty" owed to Patrick by the NFL or the Chargers to protect him from his injury exists, if at all, only by virtue of the CBA.

The Amended Complaint acknowledges that, at the time of his injury, Patrick was present on the field and ran into the sidelines as a participant in an NFL game, as an NFL player.  Am. Compl. ¶1.  California law is clear, however, that "there is no duty of care to protect a sports participant against risks of injury that are inherent in the sport itself." *O'Donoghue v. Bear Mountain Ski Resort*, 30 Cal. App. 4th 188, 192 (1994); *Mehr v. FIFA*, 115 F. Supp. 3d 1035, 1063 (N.D. Cal. 2015) ("there is no duty to prevent risks that are 'inherent in [a competitive] sport itself'" under California common law) (quoting *Knight v. Jewett*, 3 Cal. 4th 296, 317-18 (1992)).[3]

Thus, to the extent the NFL or the Chargers had any duty to protect Patrick from the risk of injury, it would derive solely from the CBA.  Indeed, there can be no dispute that Patrick was present at SoFi Stadium and allegedly injured while participating in an NFL game not as a member of the general public, but rather solely as an NFL player employed

---

[3] Indeed, California's "no-duty" rule in the sports setting is well-established.  *See Fortier v. Los Rios Cmty. Coll. Dist.*, 45 Cal. App. 4th 430, 437 (1996) (holding "risks always include accidental collisions" with "players vying for possession of a passed football"); *Ford v. Gouin*, 3 Cal. 4th 339, 343 (1992) (no duty owed to water-skier who was injured when his head struck a limb extending over the water); *O'Donoghue*, 30 Cal. App. 4th at 193 ("It is an inherent risk of skiing that a skier might encounter hazardous natural forest obstacles, such as rough terrain, trees, rocks and ravines if he or she enters the natural forest, departing from the ski run."); *Connelly v. Mammoth Mtn. Ski Area*, 39 Cal. App. 4th 8, 12 (1995) (ski operator owed no legal duty to skier to protect against collisions with ski-lift tower).

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [F.R.C.P. 12(B)(6)]

by the visiting team.[4]  As such, any "duty of care" the NFL or the Chargers allegedly owed
him was not one owed to "every person in society," but rather as a result of his status as a
player in the NFL and a member of the NFLPA.  *United Steelworkers of Am., AFL-CIO-
CLC v. Rawson*, 495 U.S. 362, 371 (1990); *see also Int'l Bhd. of Elec. Workers, AFL-CIO
v. Hechler*, 481 U.S. 851, 860 (1987) ("The threshold inquiry for determining if a
[negligence] cause of action exists is an examination of the [CBA] to ascertain what duties
were accepted by each of the parties and the scope of those duties."); *Smith v. Nat'l
Football League Players Ass'n*, No. 4:14-CV-01559, 2014 WL 6776306, at *6 (E.D. Mo.
Dec. 2, 2014) (NFL player's state law claims against the NFLPA preempted by the LMRA
because the Union's duty to protect the players' safety could not be defined independently
of the CBA); *Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1168-
69 (E.D. Mo. 2015) (same); *Williams v. Nat'l Football League*, 582 F.3d 863, 881 (8th Cir.
2009) (rejecting claim that duty to provide safety warnings about a dietary supplement
arose not from the CBA, "but from a duty that Minnesota law imposes on the NFL," and
concluding that "whether the NFL . . . owed the Players a duty to provide [] a warning
[about a particular drug] cannot be determined without examining the parties' legal
relationship and expectations as established by the CBA").

Accordingly, Patrick's tort claims "cannot be described as independent of the
[CBA]," and hence are preempted by the LMRA.  *Rawson*, 495 U.S. at 371.

    2.    Patrick's Claims Against the NFL and the Chargers Are "Substantially
          Dependent" on an Analysis of the CBA

Regardless of whether Patrick argues that his claims against the NFL and the
Chargers are not based on the CBA, they are nonetheless substantially dependent on the
meaning of the numerous provisions in the CBA and its incorporated documents
specifically addressing the rights and responsibilities of players, the NFL, NFL clubs, and

---

[4] Patrick's amendments to the Complaint, alleging failure "to ensure safe conditions
to all members of the public," as opposed to only players, *see* Am. Compl. ¶¶22, 30, are a
"deliberate attempt to avoid this forum" and his "artfully pleaded claim for relief" under
the LMRA,  *Pantazis v. Fior D'Italia, Inc.*, No. C 94-1094-FMS, 1994 WL 519469, at *4
(N.D. Cal. Sept. 20, 1994).

the NFLPA with respect to player safety, including the detailed CBA provisions addressing the safety of the playing field and surrounding areas.

As explained above, Patrick's negligence and premises liability claims require him to prove a breach of a legally recognized duty of care. He asserts that the NFL and the Chargers owed a duty to "inspect" the sidelines to "ensure the safety of the premises and/or warn of any known dangerous conditions" and failed to do so. Am. Compl. ¶¶16, 22, 30. But resolution of the nature and scope of any such duty would require interpretation of the relative responsibilities the NFL, NFL clubs, and the NFLPA with respect to stadium safety and surfaces and whether those responsibilities are sufficient to meet the duty. In particular, the Court would need to interpret Article 39, which requires "[e]very stadium in which an NFL game is to be played" to comply with the *Mandatory* Practices established by the NFL-NFLPA Field Safety Committee. CBA, Art. 39, § 11(c). Both Article 39 and the Mandatory Practices expressly require "visual inspection" of field surfaces including those areas "outside the boundary line," to ensure that they are in compliance, Mandatory Practices at 26, "and any other practices and metrics set forth by the Committee," CBA, Art. 39, § 11(d). Whether the Chargers or the NFL—or some other entity or individual—bore responsibility for "visually inspect[ing]" those areas can only be ascertained by interpreting Article 39 and its incorporated protocols.

Nor could the Court determine whether the NFL or the Chargers acted negligently without interpreting the CBA to determine whether either defendant assumed responsibility to ensure that the surfaces surrounding the playing field "be non-slip when contacted by a cleated shoe" and covered "with a non-slip mat or other covering that will not move under foot when contacted by a player" as the Mandatory Practices require. Mandatory Practices at 12. In other words, for Patrick to prevail on his tort claims, the Court would need to interpret these provisions to determine whether and to what extent the NFL or the Chargers, in fact, assumed and breached any duty to regulate conditions adjacent to the playing field and to prevent injuries caused by surface conditions like those alleged in the Amended Complaint. *See Brown v. Brotman Med. Ctr., Inc.*, 571 F. App'x

572, 576 (9th Cir. 2014) (preemption appropriate where CBA interpretation is required "to determine the standard of care that [the defendant] agreed to assume and, in turn, whether [its] actions violated that duty").

When presented with similar claims against the NFL and its member clubs, courts have not hesitated to dismiss them as preempted. *See, e.g.*, *Duerson v. Nat'l Football League, Inc.*, No. 12 C 2513, 2012 WL 1658353, at *3-4 (N.D. Ill. May 11, 2012) (LMRA preempted negligence claim against NFL for failure to warn of concussion-related injuries because "[t]he NFL could . . . reasonably exercise a lower standard of care" based on CBA interpretation); *Smith v. Nat'l Football League Players Ass'n*, No. 14 C 10559, 2014 WL 6776306, at *1, *6-8 (E.D. Mo. Dec. 2, 2014) (LMRA preempted negligence claims for failure to "research . . . ways to mitigate or prevent brain trauma" where assessing the scope of the union's duties required "interpretation of the CBA").

For example, in *Williams*, several football players sued the NFL for negligence, claiming the NFL owed "a common law duty," separate from the CBA, to provide the players "[an] ingredient-specific warning" for banned substances in dietary supplements. 582 F.3d at 881. The Eighth Circuit disagreed, explaining that "whether the NFL . . . owed the Players a duty to provide such a warning cannot be determined without examining the parties' legal relationship and expectations as established by the CBA[.]" *Id.* Similarly, in *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894 (S.D. Ohio 2007), a football player's widow sued the NFL for negligence after he died from heat exhaustion during his team's summer training camp. The court, however, held that the negligence claim was "inextricably intertwined with certain key provisions of the CBA," because "[w]hile the standard of care remains constant, the degree of care varie[d] with the facts and circumstances surrounding each particular case," including the "pre-existing contractual duties imposed by the CBA . . . concerning the general health and safety of the NFL players." *Id.* at 910.

That is especially true here, where the only way for Patrick to prove his claims that the NFL and the Chargers breached a duty of care—as well as whether they had a duty of

care in the first place—is to show that they undertook a duty to ensure that playing areas were compliant with CBA-mandated policies and practices. As explained above, the LMRA explicitly preempts claims like these. *See Miles v. Nat'l Football League*, No. 2:19-cv-18327(JXN)(JSA), 2022 WL 17129225, at *5-6 (LMRA preempted claim that "NFL owed a duty of care to help [a football player] avoid injury while playing football" because "the nature and extent of any duty of care owed by the NFL" required interpretation of "the parties' legal relationship and expectations" in CBA); *see also* Request for Judicial Notice and Declaration of Victor Salcedo, ¶¶ 3-4, filed concurrently, Exhibit A (*Gunter v Arizona Cardinals Football Club LLC, et al.*, No. CV2021-015026 (Ariz. Sup. Ct. 2021) (dismissing tort claims against the NFL and Arizona Cardinals preempted under Section 301), Exhibit B (*Maxwell v. Nat'l Football League*, No. CV 11-08394, ECF No. 58, slip op. (C.D. Cal. Dec. 8, 2011) (former player's negligence claim based on game-related injuries preempted by Section 301).

*Bush v. St. Louis Regional Convention and Sports Complex Authority, et al.*, No. 4:16CV250JCH, 2016 WL 3125869 (E.D. Mo. June 3, 2016), upon which Patrick appears to rely, does not suggest otherwise. *Bush* considered whether it was necessary to interpret the CBA to resolve a former player's negligence and premises liability claims. Relying on the then-governing CBA, the court found a "player safety" committee, which lacked the "power to commit or bind the signatories" did not, without more, warrant a finding of preemption. *Id.* at *4. Apart from the fact that *Bush* is at odds with numerous decisions finding similar claims preempted even under the prior CBA, the CBA at issue here—negotiated four years after *Bush*—contains and incorporates numerous "binding" provisions negotiated with the express purpose of issuing mandatory policies on "injury prevention" and "field performance/playability." CBA, Art. 39, §§ 11, 12. Unlike in *Bush*, those policies are compulsory for "[e]very stadium" in the NFL, *id.*, Art. 39, § 11(c), and expressly allowed Patrick and his union to initiate grievances alleging that any stadium where he played was "not in compliance," *id.*, Art. 39, § 11(d). That the advisory opinions of the safety committee in *Bush* did not "establish a contractually agreed upon standard of

care," *Bush*, 2016 WL 3125869, at *4, has no bearing on Patrick's claims or the categorically different CBA provisions at issue here.

        3. <u>Patrick's Alleged Damages Resulting From His Injury Are Inextricably Intertwined With The Terms Of The CBA.</u>

Patrick's claim for damages provides a further basis for preemption. As set forth above, the CBA contains numerous provisions addressing a player's entitlement to medical care, present and future salary, and other benefits and remedies in the event of an injury. This includes the obligation to provide players with medical and rehabilitative care; the obligation to pay a player's salary while he remains injured during the season of injury and potentially beyond; and an array of post-career "no-fault" benefits specifically negotiated in recognition of the risks of injury involved in playing in NFL games. *See supra*, pp. 8-9.

In negotiating these terms, the parties clearly intended the CBA to be the comprehensive and a "complete understanding" as to the remedies available to players injured while playing football. CBA, Art. 2, § 4(a) (CBA "represents the complete understanding of the parties on all subjects covered"). Notwithstanding these detailed provisions that address the precise injury here, Patrick sued the Chargers and the NFL seeking medical expenses, lost income, and future earnings. Am. Compl. ¶47. But Patrick cannot simply ignore the parties' "complete understanding" on remedies for players injured while performing under their contracts. To the contrary, to ascertain the NFL and the Chargers' liability, if any, the Court must construe CBA provisions governing the very same remedies Patrick seeks here.

For example, Article 39 authorizes medical care for a player by his Club's physician and provides that all such care "will be the responsibility of the respective Clubs." CBA, Art. 39, § 1(e). Paragraph 9 of the collectively-bargained NFL Player Contract, which is incorporated in the CBA, provides that a player injured "in the performance of his services under [his] contract" "will receive such medical and hospital care during the term of [his] contract as the Club physician may deem necessary." *Id.*, App'x A, ¶9. The Contract

mandates that a player "continue to receive his yearly salary . . . during the season of injury" as long as he is physically unable to play as a result of his injury. *Id*. The Court must interpret these and other provisions to determine whether the NFL and the Chargers, as opposed to Patrick's own Club, bear any responsibility for "loss of earnings/earnings capacity" and "medical expenses." Am. Comp. ¶47.

Indeed, it is axiomatic that "questions relating to what the parties to a labor agreement agreed, and *what legal consequences were intended to flow from breaches of that agreement*, must be resolved by reference to uniform federal law[.]" *Allis-Chalmers*, 471 U.S. at 211 (italics added). The parties negotiated the "legal consequences" for injured players, which must be interpreted to ascertain the scope of any remedies due to Patrick. Patrick cannot avoid preemption by ignoring those provisions and "relabeling" his claims in tort. *Id*.; *see, e.g.*, *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1459 (9th Cir. 1996) (dismissing state-law claims where plaintiff's "remedies lie in the grievance procedures set forth under the CBA"); *Espinoza v. Cargill Meat Solutions Corp.*, 622 F.3d 432, 443-44 (5th Cir. 2010) (dismissing negligence claim based on employee's workplace injury as preempted where the "CBA detail[ed] the procedure and scope of the remedies available to . . . employees injured while working"); *Navarro v. Excel Corp.*, 48 F. App'x 481, 2002 WL 31049478, at *1 (5th Cir. 2002) (negligence claim regarding working conditions preempted where "court [] would have to determine the scope of [employer's] duties and [the employee's] remedies under the CBA").

## B. Patrick's Failure to Exhaust Mandatory CBA Grievance Procedures Independently Requires Dismissal

Patrick's failure to exhaust the CBA's mandatory grievance and arbitration requirements provides an independent ground for dismissal. Because the scope of the CBA's grievance provision, which requires arbitration of all disputes involving "compliance with" or "application of" the CBA, is even broader than the (already-broad) Section 301 preemption standard, dismissal is just as appropriate on failure to exhaust grounds.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [F.R.C.P. 12(B)(6)]

Because federal policy "strongly favors resolution of labor disputes through arbitration," *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1111 (9th Cir. 2012), Section 301 precludes parties from suing before exhausting bargained-for arbitration procedures, *see Allis-Chalmers*, 417 U.S. at 219-21; *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990).  Where, as here, a party fails to exhaust mandatory grievance procedures, claims must be dismissed unless it can be said "with positive assurance" that the arbitration provisions are "not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Only an "express exclusion" of a particular grievance or "the most forceful evidence of a purpose to exclude the claim from arbitration" will overcome the presumption of arbitrability where a CBA contains a broad arbitration clause.  *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991).

The CBA has long included mandatory dispute resolution provisions requiring all disputes involving not just "the interpretation of," but also "*application of*, or *compliance with*, any provision of" the CBA, to be resolved exclusively in accordance with agreed-to arbitration procedures.  CBA, Art. 43, § 1 (italics added).  Even if the Court could somehow resolve Patrick's claim without "interpreting" the CBA provisions regulating player safety and playing areas, at the very least Patrick's claim involves both the "application of," and "compliance with," those provisions.  *See, e.g.*, *Boogaard v. Nat'l Hockey League*, 126 F. Supp. 3d 1010, 1027 (N.D. Ill. 2015) (finding claim properly dismissed for failure to exhaust); *Jeffers v. D'Allessandro*, 681 S.E.2d 405, 415 (N.C. Ct. App. 2009) (holding player's tort claims were subject to arbitration, even if not preempted, because "[e]ven if we were to agree with [the player] that his claims do not involve an interpretation of the CBA, which we do not, 'application' cannot be read out of the contract").

Here, Patrick's claim was grievable in important respects.  The CBA gave him "the right to file a [grievance] for any alleged violation" of Article 39 of the CBA, including

any claims that the NFL or Chargers failed to ensure that "every NFL Stadium is in compliance with the Mandatory Field Wall Padding and Non-Slip Surfaces Policy." CBA, Art. 39, § 11(d).  The CBA also allowed Patrick and the NFLPA to initiate a grievance concerning health and safety standards provided in the CBA, *see, e.g.*, *id.*, Art. 39, §§ 3 & 5, and defined a player's *exclusive* remedies for football-related injuries, *see, e.g.*, *id.*, Art. 41 (workers' compensation), *id*, Art. 44 (injury grievance); 45 (injury protection), 60 (disability benefits).  Indeed, many of the remedies that Patrick seeks are precisely the same benefits and compensation that his union agreed to include in the CBA.  *Compare* Am. Compl. ¶19 (alleging his injury "will require surgical intervention"); *id.* (alleging loss of benefits in an estimated amount of $200,000-$400,000); *id.* (alleging loss of "$370,000 in salary earnings"), *with* CBA, Art. 39 (medical care and treatment); *id*., App'x A, ¶9 (continued salary). But there is no allegation that Patrick exhausted the CBA's mandatory arbitration procedures or requested that the NFLPA initiate a grievance on his behalf. Thus, regardless of whether Patrick's claim is preempted, it would still not excuse his failure to exhaust the CBA remedies to which his union agreed.

## IV.    **CONCLUSION**

For the reasons stated above, the NFL and the Chargers respectfully request that this Court dismiss Patrick's Amended Complaint against the NFL and the Chargers.


Dated:  February 21, 2023          AKIN GUMP STRAUSS HAUER & FELD LLP


By:    */s/ Victor A. Salcedo*
       Victor A. Salcedo
       Attorney for Defendants
       NATIONAL FOOTBALL LEAGUE and
       THE LOS ANGELES CHARGERS

1

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants NATIONAL FOOTBALL LEAGUE and THE LOS ANGELES CHARGERS, certifies that this brief contains 6,849 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated [date].

Executed on February 21, 2023, at Los Angeles, California.

Victor A. Salcedo
[Print Name of Person Executing Proof]

*/s/ Victor A. Salcedo*
[Signature]

1

2

**CERTIFICATE OF SERVICE**
*Patrick v. NFL et al.*
USDC Central District of California Case No.: 2:23-cv-01069-DMG (SHKx)

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

5

6

7

  I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1999 Avenue of the Stars, Suite 600, Los Angeles, California, 90067. On February 21, 2023, I served the foregoing document(s) described as: **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [F.R.C.P. 12(B)(6)]** on the interested party(ies) below, using the following means:

8

**SEE ATTACHED SERVICE LIST**

9

10

11

☒  **BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LR, the foregoing document will be served by the court via NEF and hyperlink to the document. I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email address stated above.

12

13

14

15

16

☒  **BY UNITED STATES MAIL** I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

17

18

☒  **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.
Executed on February 21, 2023, at Los Angeles, California.

19

20

Evelyn Chun
_____
[Print Name of Person Executing Proof]

*/s/ Evelyn Chun*
_____
[Signature]

21

22

23

24

25

26

27

28

**ATTACHED SERVICE LIST**
*Patrick v. NFL et al.*
USDC Central District of CA Case No.: 2:23-cv-01069-DMG (SHKx)

| | |
|---|---|
| William M. Berman, Esq.<br>Harlan J. Zaback, Esq.<br>C. Oliver Barwald, Esq.<br>**BERMAN & RIEDEL, LLP**<br>12264 El Camino Real, Suite 300<br>San Diego, California 92130<br>Tel: (858) 330-8855<br>Fax: (858) 330-9855<br>Emails:  wberman@bermanlawyers.com<br>          hzaback@bermanlawyers.com<br>          obarwald@bermanlawyers.com | *Attorneys for Plaintiff*<br>*AARON PATRICK* |
| David P. Hansen, Esq.<br>Sarah M. Nakamoto, Esq.<br>**SNELL & WILMER L.L.P.**<br>600 Anton Blvd., Suite 1400<br>Costa Mesa, California 92626-7689<br>Tel: (714) 427-7000<br>Fax: (714)427-7799<br>Emails:  dhansen@swlaw.com<br>          snakamoto@swlaw.com | *Attorneys for Defendant*<br>*ESPN PRODUCTIONS, INC.,*<br>*erroneously sued herein as ESPN, INC.* |
| Eric C. Bradley, Esq.<br>**LEWIS BRISBOIS**<br>650 Town Center Drive, Suite 1400<br>Costa Mesa, CA 92626<br>Tel: (714) 668-5581<br>Fax: (714) 850-1030<br>Email:  eric.Bradley@lewisbrisbois.com | *Attorney for Defendants*<br>*STADCO LA, LLC dba SOFI STADIUM,*<br>*HOLLYWOOD PARK LAND COMPANY,*<br>*LLC, STOCKBRIDGE CAPITAL GROUP,*<br>*LLC, KROENKE SPORTS &*<br>*ENTERTAINMENT COMPANY, and*<br>*PINCAY RE LLC* |

*Via U.S. Mail*