**AKIN GUMP STRAUSS HAUER & FELD LLP**
VICTOR A. SALCEDO (SBN 317910)
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
vsalcedo@akingump.com
Telephone: (310) 229-1000
Facsimile: (310) 229-1001

DAN NASH (*admitted pro hac vice*)
STACEY EISENSTEIN (*admitted pro hac vice*)
JAMES CROWLEY (*admitted pro hac vice*)
AMANDA McGINN (*admitted pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K. Street, N.W.
Washington, D.C. 20006
dnash@akingump.com
seisenstein@akingump
jcrowley@akingump.com
amcginn@akingump.com
Telephone: 202-887-4000
Facsimile: 202-887-4288

Attorneys for Defendants
NATIONAL FOOTBALL LEAGUE and
THE LOS ANGELES CHARGERS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| AARON PATRICK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE, a business entity; STADCO LA, LLC d/b/a SOFI STADIUM, a business entity; HOLLYWOOD PARK LAND COMPANY, LLC, a business entity; STOCKBRIDGE CAPITAL GROUP, LLC, a business entity; THE FLESHER GROUP, a business entity; KROENKE SPORTS & ENTERTAINMENT COMPANY, a business entity; CHARGERS FOOTBALL COMPANY, LLC d/b/a THE LOS ANGELES CHARGERS, a business entity; MOE "GREENHAT," an individual; ESPN, INC., a business entity; ROE MAT COMPANY, a business entity; and DOES 1-40, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-01069-DMG (SHKx)<br><br>District Judge: Hon. Dolly M. Gee<br>Magistrate Judge: Shashi H. Kewalramani<br><br>**DEFENDANT NATIONAL FOOTBALL LEAGUE AND LOS ANGELES CHARGERS' OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**<br><br>Courtroom: 8C, 8th Floor<br>Date: May 5, 2023<br>Time: 9:30 a.m.<br><br>Date Removal Filed: February 13, 2023<br>Date Action Filed: November 15, 2022 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ....................................................................................2

III.  ARGUMENT.........................................................................................4

      A.    This Court Has Jurisdiction Over State-Law Claims That Are Completely Preempted By The LMRA ....................................................................4

            1.    State-Law Claims That Are Completely Preempted Are Removable From State To Federal Court ................................................4

            2.    The LMRA Completely Preempts Claims That Are Inextricably Intertwined With A CBA ..............................................................5

      B.    Patrick's Claims Against The NFL and Chargers Are Completely Preempted .......................................................................................7

            1.    Any Duty Allegedly Owed to Patrick Must Arise from the CBA.......8

            2.    The Scope of Any Duty Allegedly Owed to Patrick Is "Substantially Dependent" on CBA Interpretation ....................................................10

            3.    The Remedies Patrick Seeks for His Alleged Injuries Are Also "Substantially Dependent" on CBA Interpretation............................14

            4.    Patrick Cannot Distinguish the Host of Decisions Holding Similar Claims Against the NFL and Clubs Preempted.................................15

IV.  CONCLUSION...................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Airlines Inc. v. Schurke*,
   898 F.3d 904 (9th Cir. 2018) ...................................................................6

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985).............................................................................6, 12, 15

*Atwater v. Nat'l Football League Players Ass'n*,
   626 F.3d 1170 (11th Cir. 2010) .....................................................13, 15, 16

*Ballard v. Nat'l Football League Players Ass'n*,
   123 F. Supp. 3d 1161 (E.D. Mo. 2015) ..........................................9, 15, 16

*Beacon Res. Cmty. Ass'n v. Skidmore, Owings, & Merrill LLP*,
   59 Cal. 4th 568 (2014) ............................................................................7

*Beneficial Nat'l Bank v. Anderson*,
   539 U.S. 1 (2003) ...................................................................................4, 5

*Boldt v. N. States Power Co.*,
   904 F.3d 586 (8th Cir. 2018) .................................................................12

*BP Amoco Corp. v. NLRB*,
   217 F.3d 869 (D.C. Cir. 2000).............................................................12

*Brown v. Brotman Med. Ctr., Inc.*,
   571 F. App'x 572 (9th Cir. 2014).........................................................8, 12

*Burnside v. Kiewit Pac. Corp.*,
   491 F.3d 1053 (9th Cir. 2007) ...............................................................7

*Bush v. St. Louis Reg'l Conv.*,
   No. 4:16CV250, 2016 WL 3125869 (E.D. Mo. June 3, 2016) .............17, 19

*Caterpillar, Inc. v. Williams*,
   482 U.S. 386 (1987).............................................................................4, 16

*Curtis v. Irwin Indus., Inc.*,
   913 F.3d 1146 (9th Cir. 2019) .........................................................5, 6, 17

*Dent v. National Football League*,
   902 F.3d 1109 (9th Cir. 2018) ..............................................................13, 14

*Duerson v. Nat'l Football League, Inc.*,
  No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ........................13, 16, 17

*Espinal v. Nw. Airlines*,
  90 F.3d 1452 (9th Cir. 1996) .................................................................................15

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981)................................................................................................5

*Fortier v. Los Rios Cmty. Coll. Dist.*,
  45 Cal. App. 4th 430 (1996) ...................................................................................8

*Fowler v. Ill. Sports Facilities Auth.*,
  338 F. Supp. 3d 822 (N.D. Ill. 2018) ...............................................................17, 18

*Halbach v. Great-West Life & Annuity Ins. Co.*,
  561 F.3d 872 (8th Cir. 2009) .................................................................................11

*Int'l Bhd. of Elec. Workers v. Hechler*,
  481 U.S. 851 (1987)........................................................................................6, 8, 9, 13

*Jessen v. N. Cal. Off Track Wagering, Inc.*,
  No. CV 14-01557, 2014 WL 12886610 (C.D. Cal. Sept. 29, 2014) (Gee, J.) ..............7

*Jones v. Awad*,
  39 Cal. App. 5th 1200 (2019) ..................................................................................7

*Jurevicius v. Cleveland Browns Football Co., LLC*,
  No. 1:09-CV-1803, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010) ..........................18

*Knight v. Jewett*,
  3 Cal. 4th 296 (1992) .............................................................................................8, 9

*Lingle v. Norge Div. of Magic Chef, Inc.*,
  486 U.S. 399 (1988)................................................................................................6, 7

*Maxwell v. Arkansas Power and Light Co.*,
  975 F.2d 866, 1992 WL 206783 (8th Cir. 1992) (unpub.) .........................................12

*McCray v. Marriott Hotel Servs., Inc.*,
  902 F.3d 1005 (9th Cir. 2018) .................................................................................5

*McPherson v. Tenn. Football Inc.*,
  No. 3:07-0002, 2007 WL 5445124 (M.D. Tenn. May 31, 2007)................................18

DEFENDANT NATIONAL FOOTBALL LEAGUE AND LOS ANGELES CHARGERS' OPPOSITION TO PLAINTIFF'S
MOTION FOR REMAND

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987)................................................................................4, 5, 17

*Navarro v. Excel Corp.*,
    48 F. App'x 481, 2002 WL 31049478 (5th Cir. 2002)....................................15

*Newberry v. Pac. Racing Ass'n*,
    854 F.2d 1142 (9th Cir. 1988) ...........................................................................4

*O'Donoghue v. Bear Mtn. Ski Resort*,
    30 Cal. App. 4th 188 (1994) ..............................................................................8

*Parker v. It's a Laugh Prods.*,
    No. CV 09-02442, 2009 WL 10671983 (C.D. Cal. May 28, 2009) ....................7

*Raphael v. Tesoro Refining & Mktg. Co.*,
    No. 2:15-cv-02862, 2015 WL 3970293 (C.D. Cal. June 30, 2015) ....................5

*Ryans v. Houston NFL Holdings, L.P.*,
    No. 4:16-CV-3554, 2017 WL 1905774 (S.D. Tex. May 9, 2017) ...............17, 18

*Shane v. Greyhound Lines, Inc.*,
    868 F.2d 1057 (9th Cir. 1989) ...........................................................................7

*Sherwin v. Indianapolis Colts, Inc.*,
    752 F. Supp. 1172 (N.D.N.Y. 1990)........................................................10, 16, 17

*Smith v. Evening News Ass'n*,
    371 U.S. 195 (1962)...........................................................................................6

*Smith v. Nat'l Football League Players Ass'n*,
    No. 4:14-CV-01559, 2014 WL 6776306 (E.D. Mo. Dec. 2, 2014)..........5, 15, 16

*Stringer v. National Football League*,
    474 F. Supp. 2d 894 (S.D. Ohio 2007) .....................................................16, 17

*Torres v. S. Cal. Permanente Med. Grp.*,
    No. CV22-1910, 2022 WL 2116339 (C.D. Cal. June 13, 2022) .........................5

*Tynes v. Buccaneers Ltd. P'ship*,
    134 F. Supp. 3d 1351 (M.D. Fla. 2015)...........................................................18

*United Steelworkers of Am., AFL-CIO-CLC v. Rawson*,
    495 U.S. 362 (1990).......................................................................................9, 10

DEFENDANT NATIONAL FOOTBALL LEAGUE AND LOS ANGELES CHARGERS' OPPOSITION TO PLAINTIFF'S
MOTION FOR REMAND

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)................................................................................6

*Williams v. Nat'l Football League*,
   582 F.3d 863 (8th Cir. 2009) ...........................................9, 13, 16

**Statutes**

28 U.S.C. § 1441(b) ................................................................................4

29 U.S.C. § 185 .......................................................................................1

29 U.S.C. § 185(a) ..................................................................................5

DEFENDANT NATIONAL FOOTBALL LEAGUE AND LOS ANGELES CHARGERS' OPPOSITION TO PLAINTIFF'S
MOTION FOR REMAND

# I.    **INTRODUCTION**

It is undisputed that Plaintiff Aaron Patrick's negligence and premises liability claims are based on an injury he suffered while attempting to make a tackle during an NFL game at SoFi Stadium in Los Angeles, California.  It is also undisputed that Patrick was on the field and the sidelines as an NFL player for the Denver Broncos and was contractually obligated to play in the game against the Los Angeles Chargers.  Nor does Patrick dispute that he was subject to a collective bargaining agreement ("CBA") in which his union, the NFL, and all NFL member Clubs have negotiated the manner in which the safety of *surfaces* on and off the field will be maintained and inspected, as well as provisions addressing players' entitlement to medical care, present, and future salary, and other benefits and remedies for the precise injury alleged here.

Patrick's motion to remand asks the Court to ignore all this.  He asserts that this case is nothing more than a "straightforward slip-and-fall case" and that, at the time he sustained his alleged injury, he was no different from any other "business invitees and other members of the general public."  Dkt. 19 at 1, 4. But these assertions cannot be reconciled with Patrick's own complaint allegations, which make clear that Patrick would not have been present at SoFi Stadium, much less sustained an injury during an NFL game there, in the absence of his governing NFL Player Contract and the CBA controlling the terms and conditions of his employment.  The fact that Patrick did not plead a CBA violation is irrelevant.  Congress has given a handful of federal statutes such extraordinary preemptive force that they transform state-law causes of action into federal ones, thus permitting removal to federal court.  The Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), is one of those statutes.  Under Section 301 of the LMRA, any state-law claim that is inextricably intertwined with a CBA is deemed a federal claim, and remand is properly denied.

As set forth below and in the NFL and Chargers' motion to dismiss (Dkt. 18), Patrick's claims are inextricably intertwined with and require interpretation of the CBA. Patrick asserts claims of: (1) negligence against the NFL, the Chargers, and other

Defendants; and (2) premises liability against several Defendants (including the Chargers), but not the NFL. Both claims require the Court to ascertain the NFL's and Chargers' duty to Patrick by interpreting CBA provisions assigning the relative rights and responsibilities to the NFL, the National Football League Players Association ("NFLPA"), NFL Clubs, and players with respect to health and safety matters—including specifically the surfaces and conditions "outside the boundary line" of the traditional playing field. The Court also must interpret the CBA's comprehensive scheme of remedies for players injured while playing football, several of which Patrick seeks or could have exhausted (but did not) before initiating this action.

Accordingly, the Court should deny Patrick's motion to remand and grant the NFL and Chargers' motion to dismiss.

## II.    **BACKGROUND**

As an NFL player, Patrick's employment was governed by a collective bargaining agreement ("CBA") between the NFLPA, the exclusive collective bargaining representative of all NFL players, and the National Football League Management Council ("NFLMC"), the collective bargaining representative of the NFL and its 32 member Clubs. Dkt. 1-22 (CBA). As set forth in the NFL and Chargers' motion to dismiss (Dkt. 18 at 4-8), the CBA and its incorporated documents contain numerous provisions governing the relative rights and responsibilities of the NFL, its member Clubs, the NFLPA, and the players regarding, among other things, player health and safety and the condition of stadium facilities and playing surfaces. *See, e.g.*, CBA, Art. 39. For example, the parties to the CBA have established a joint Union-Management "Accountability and Care Committee" responsible for studying and developing standards of care regarding the prevention and treatment of player injuries. CBA, Art. 39, § 5. Even more specifically, the NFLMC and the NFLPA established the joint Field Surface Safety & Performance Committee ("NFL-NFLPA Field Safety Committee") under Article 39 "[i]n furtherance of [the] NFL and NFLPA's ongoing efforts and express intention to enhance the safety and performance of NFL field surfaces and playing areas, and thereby advance the safety and

protect the health of NFL players." *Id.*, Art. 39, § 5(x). Among other things, the NFL-NFLPA Field Safety Committee must establish and "review the Mandatory Practices for the Maintenance of Natural and Synthetic Surfaces for NFL Games" (the "Mandatory Practices") and "agree upon improvements, as necessary." *Id.*, Art. 39, § 11(c); *see also* Dkt. 1-23 (Mandatory Practices). The NFL-NFLPA Field Safety Committee must ensure that "[e]very stadium in which an NFL game is to be played [is] in compliance with the Committee's revised Mandatory Practices," which contain numerous requirements designed to ensure the safety of the surface conditions both on and off the field of play at each NFL stadium. *See* Dkt 1-23. These include "[t]he entire surface of the field that a player may be expected to interact with during play, including both end zones and the sidelines" as well as surfaces "outside the media line." *Id*. at 29.

The CBA and Patrick's NFL Player Contract (an appendix to the CBA) also comprehensively address the obligations of the NFL and the NFL Clubs to provide medical care, compensation, and other benefits to players injured within the course and scope of their employment. These CBA provisions specifically include, among other things, the player's right to medical care for his injury, the player's right to continued payment of his salary while injured for the duration of the season of injury, extended salary protection following the season of injury for qualifying players, workers compensation benefits, and injury-related benefits post-retirement. *See, e.g.*, CBA, Art. 39 ("Players' Rights to Medical Care and Treatment"); *id.*, App'x A ("NFL Player Contract") ¶ 9; Art. 41 ("Workers Compensation"); Art. 45 ("Injury Protection"); Art. 53 ("Retirement Plan"); Art. 55 ("Player Annuity Program"); Art. 57 ("88 Benefit"); Art. 58 ("Group Insurance"); Art. 60 ("NFL Player Disability & Neurocognitive Benefit Plan"); Art. 61 ("Long Term Care Insurance Plan"); Art. 63 ("Former Player Life Improvement Plan"); *see also, e.g.*, Dkt. 18 at 8. The CBA further requires arbitration of "any dispute" involving "the interpretation of, application of, or compliance with, any provision of" the CBA and its incorporated documents, *see* CBA, Art. 43, § 1, including any dispute over the safety of the playing field and surrounding areas, *see id.*, Art. 39, §§ 11(d), 21.

Notwithstanding these mandatory provisions, Patrick filed this action in California state court. Patrick alleges he was injured when he "attempted to make a tackle" during a game between the Broncos and the Chargers on October 17, 2022 at SoFi Stadium. Dkt. 1-3 ("Am. Compl.") ¶¶ 1, 15, 17. Specifically, he contends that he tore his Anterior Cruciate Ligament when his "momentum carried him off the field and beyond the sidelines where, while attempting to avoid contact" with the NFL's TV liaison, his "left foot stepped onto the mats and/or cords/cables and fell awkwardly." *Id.* ¶ 1. Patrick asserts claims of premises liability and negligence for which he seeks damages for, among other things, "medical expenses" and "loss of earnings/earnings capacity." *Id*. ¶ 19. On February 13, 2023, the NFL and the Chargers timely removed the case to this Court on the basis of federal question jurisdiction because all of Patrick's claims against the NFL and the Chargers are completely preempted by Section 301 of the LMRA. *See* Dkt. 1. On February 21, 2023, the NFL and the Chargers filed a motion to dismiss Patrick's claims. Dkt. 18.

## III.  ARGUMENT

### A.  This Court Has Jurisdiction Over State-Law Claims That Are Completely Preempted By The LMRA

#### 1.  State-Law Claims That Are Completely Preempted Are Removable From State To Federal Court

Under 28 U.S.C. § 1441(b), "[a] civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Even where a plaintiff pleads only state-law claims, the action nevertheless is removable if it implicates an area that Congress has chosen to regulate to such an extent that the claim will be deemed "necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). As Patrick acknowledges (Dkt. 19 at 5-6), a plaintiff cannot avoid this "complete preemption doctrine" by artfully pleading a complaint so as to omit facts that indicate federal jurisdiction. *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988) (quoting *Caterpillar, Inc. v.*

*Williams*, 482 U.S. 386, 393 (1987)). To the contrary, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8; *see also Raphael v. Tesoro Refining & Mktg. Co.*, No. 2:15-cv-02862, 2015 WL 3970293, at *2 (C.D. Cal. June 30, 2015) ("If the claim arises under federal law, the federal court will re-characterize it and uphold removal," even if the claim is pled "artfully as a state law cause of action." (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n.2 (1981)); *Smith v. Nat'l Football League Players Ass'n*, No. 4:14-CV-01559, 2014 WL 6776306, at *3 (E.D. Mo. Dec. 2, 2014) (court may "scrutinize the complaint in the removed case to determine whether the action, though ostensibly grounded solely on state law, is actually grounded on a claim in which federal law is the exclusive authority") (citing *Federated*, 452 U.S. at 408).

Consistent with these principles, the LMRA has "such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life*, 481 U.S. at 65). "'By enacting the LMRA, Congress completely preempted state law for certain labor-related claims . . . ,' notwithstanding the fact that state law would provide a cause of action in the absence of [the LMRA]." *Torres v. S. Cal. Permanente Med. Grp.*, No. CV22-1910, 2022 WL 2116339, at *6 (C.D. Cal. June 13, 2022) (quoting *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018)). Thus, a complaint raising state-law claims that fall within the scope of the LMRA will be considered to raise federal claims and thus "raises a federal question that can be removed to a federal court." *Curtis*, 913 F.3d at 1152.

2. The LMRA Completely Preempts Claims That Are Inextricably Intertwined With A CBA

Section 301 of the LMRA governs all suits for breach of contract "between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). The Supreme Court has long interpreted Section 301 as authorizing federal courts to create a

"uniform body of federal substantive law" to adjudicate disputes that arise out of labor contracts. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) (quoting *Smith v. Evening News Ass'n*, 371 U.S. 195, 200 (1962)). Thus, any state-law claim whose resolution "is inextricably intertwined with terms in a labor contract . . . must be brought under § 301" and is removable to federal court under the complete preemption doctrine. *Allis-Chalmers*, 471 U.S. at 210.

Complete preemption under Section 301 "'is an essential component of federal labor policy' for three reasons." *Curtis*, 913 F.3d at 1152 (quoting *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 917-18 (9th Cir. 2018)). First, "a collective bargaining agreement is more than just a contract; it is an effort to erect a system of industrial self-government." *Id.* (quoting *Schurke*, 898 F.3d at 918). Second, "because the CBA is designed to govern the entire employment relationship, including disputes which the drafters may not have anticipated, it 'calls into being a new common law—the common law of a particular industry . . . .'" *Id.* (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579 (1960)). Third, "grievance and arbitration procedures 'provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process.'" *Id.* (quoting *Schurke*, 898 F.3d at 918). Taken together, these important interests reflect the long-established rule that no state-law claim can displace a CBA as part of the "continuous collective bargaining process." *United Steelworkers*, 363 U.S. at 596. To the contrary, such claims are completely "pre-empted by federal labor law." *Allis-Chalmers*, 471 U.S. at 210.

Thus, if "any attempt to assess liability" on a tort claim "inevitably will involve contract interpretation," that claim is preempted. *Allis-Chalmers*, 471 U.S. at 218; *see Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862 (1987) (preemption appropriate when "questions of contract interpretation . . . underlie any finding of tort liability" (quoting *Allis-Chalmers*, 471 U.S. at 218)). Indeed, complete preemption applies whenever adjudicating an "element" of the claim would "require[ ] a court to interpret any term of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486

U.S. 399, 407 (1988); *accord Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1062 (9th Cir. 1989) (state-law claims are preempted when "the presence of the necessary elements" cannot "be ascertained without recourse to interpretation of the CBA"); *Parker v. It's a Laugh Prods.*, No. CV 09-02442, 2009 WL 10671983, at *2 (C.D. Cal. May 28, 2009) ("a claim arises under and is governed by Section 301(a) . . . even if the plaintiff omits reference to the CBA in her complaint or purports to base her claims on state law" (citing *Lingle*, 486 U.S. at 405-06)).

Patrick's recitation of the LMRA preemption standards (Dkt. 19 at 5-6) confirms that the parties agree that the proper test for removability is the one explained by this Court: "to determine whether a state law claim is preempted by section 301, the Court must first consider whether the asserted cause of action involves a right conferred upon an employee by virtue of state law or by the CBA." *Jessen v. N. Cal. Off Track Wagering, Inc.*, No. CV 14-01557, 2014 WL 12886610, at *3 (C.D. Cal. Sept. 29, 2014) (Gee, J.). "If the right exists 'solely as a result of the CBA,' the claim is preempted." *Id.* (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). "If the right exists independently of the CBA, the Court must consider whether it is 'substantially dependent on' analysis of the CBA. *Id.* (quoting *Burnside*, 491 F.3d at 1059).

## B. Patrick's Claims Against The NFL and Chargers Are Completely Preempted

Section 301 completely preempts Patrick's complaint because the elements of his negligence and premises liability claims cannot be ascertained without CBA interpretation. To state a claim for negligence and premises liability against the NFL and the Chargers, Patrick must establish that they had "a legal duty to use due care," that they "breach[ed] such legal duty," and that the breach was the "proximate or legal cause of the resulting injury" for which he is entitled to damages. *Beacon Res. Cmty. Ass'n v. Skidmore, Owings, & Merrill LLP*, 59 Cal. 4th 568, 573 (2014) (elements of negligence claim); *see also Jones v. Awad*, 39 Cal. App. 5th 1200, 1207 (2019) ("The elements of a cause of action for premises liability are the same as those for negligence.") (citations

omitted). The necessary elements of both claims involve rights that could only be conferred by the CBA and that are plainly dependent on CBA analysis.

1. Any Duty Allegedly Owed to Patrick Must Arise from the CBA

Negligence and premises liability claims are completely preempted by the LMRA when interpretation of a collective bargaining agreement is required to ascertain the existence of a "duty of care on the [defendant]." *Hechler*, 481 U.S. at 862; *see Brown v. Brotman Med. Ctr., Inc.*, 571 F. App'x 572, 576 (9th Cir. 2014) (preemption appropriate where CBA interpretation required "to determine the standard of care that [the defendant] agreed to assume and, in turn, whether [its] actions violated that duty"). Here, any "duty of care" owed to Patrick by the NFL or the Chargers to protect him from his injury exists, if at all, only in the CBA.

Patrick's motion to remand nevertheless urges the Court to locate an independent "duty of care" somewhere in the common law. But Patrick may not evade two straightforward premises that mandate preemption here. First, Patrick openly alleges that he was injured while playing in an NFL game when he "attempted to make a tackle" and his "momentum carried him off the field and beyond the sidelines." Am. Compl. ¶ 15. In fact, his motion acknowledges that he was injured while playing "professional football" and "he fell during a nationally televised Monday Night Football Game which was broadcast to millions worldwide." Dkt. 19 at 1. Second, California law is clear that "there is no duty of care to protect a sports participant against risks of injury that are inherent in the sport itself." *O'Donoghue v. Bear Mtn. Ski Resort*, 30 Cal. App. 4th 188, 192 (1994) (citing *Knight v. Jewett*, 3 Cal. 4th 296, 315 (1992)). Indeed, courts have long recognized that California's "no-duty" rule applies to the "risks" of football, including when players "v[ie] for possession of a passed football" and attempt to make a tackle. *Fortier v. Los Rios Cmty. Coll. Dist.*, 45 Cal. App. 4th 430, 437 (1996); *see also O'Donoghue*, 30 Cal. App. 4th at 193 (noting it "is an inherent risk" of a sport that a player "might encounter hazardous" conditions upon "departing from" the traditional course or field of play).

///

Those two premises, taken together, lead inexorably to the conclusion that whatever duty the NFL or the Chargers allegedly had to protect Patrick from the risks of injury inherent in football, it derived solely from the CBA. Patrick does not and cannot dispute that the only reason he was present on the sidelines was because his momentum carried him off the playing field where he was playing NFL football under the terms of the CBA and his NFL Player Contract. Thus, because his tort claims "cannot be described as independent of the [CBA]," they are completely preempted by the LMRA. *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 371 (1990); *see also Hechler*, 481 U.S. at 862 (negligence claims preempted when CBA interpretation is required to ascertain the existence of "an implied duty of care on the [defendant]"); *Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1163, 1171-72 (E.D. Mo. 2015) (holding players' negligent hiring claims preempted because "[t]he CBAs contain numerous sections related to . . . a Joint Committee focused on the NFL players' safety," and the claims therefore "will necessarily depend upon an analysis of these provisions to determine whether the CBAs impose such a duty and whether they specify a standard of care"); *Williams v. Nat'l Football League*, 582 F.3d 863, 881 (8th Cir. 2009) (players' negligence claims preempted because "whether the NFL or the individual defendants owed the Players a duty . . . cannot be determined without examining the parties' legal relationship and expectations as established by the CBA" and incorporated drug-testing policy).

Patrick makes no attempt to negate these basic principles of federal jurisdiction. Instead, he contends that "nothing" about his claims "differs from the character of a non-NFL-player's identical claims." Dkt. 19 at 10. Needless to say, Patrick cites no authority that allows a professional sports player to avoid preemption simply by alleging "any invitees" on the sidelines could sue the NFL or the Chargers for similar injuries, albeit incurred while doing something *other than* playing football. To the contrary, in "the sports setting," there is "no duty to eliminate" the "conditions or conduct that otherwise might be viewed as dangerous" to invitees or the general public. *Knight*, 3 Cal. 4th at 315. Thus,

DEFENDANT NATIONAL FOOTBALL LEAGUE AND LOS ANGELES CHARGERS' OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND

any "duty of care" the NFL or the Chargers allegedly owed Patrick was not one "owed to every person in society," but exists, if at all, only because his union signed the CBA on his behalf as an NFL player. *Rawson*, 495 U.S. at 371; *see also Sherwin v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1178 (N.D.N.Y. 1990) (holding Club's "duties are not those that would be 'owed to every person in society,'" as required "to establish independence from the collective bargaining agreement").

In short, because Patrick's tort claims depend on a "duty" that is not "independent of" the CBA and its incorporated documents, the LMRA completely preempts his claims. *Rawson*, 495 U.S. at 371.

### 2. The Scope of Any Duty Allegedly Owed to Patrick Is "Substantially Dependent" on CBA Interpretation

As explained in the NFL and Chargers' motion to dismiss (Dkt. 18 at 12-16), Patrick's claims are also preempted because they are substantially dependent on the meaning of numerous provisions in the CBA and its incorporated documents specifically addressing the rights and responsibilities of the NFL, the NFLPA, the NFL Clubs, and the players—particularly with respect to the safety of the playing field and surrounding areas.

Instead of arguing that the Court could somehow avoid CBA interpretation in resolving his claims, Patrick seeks to change the subject. In particular, Patrick repeatedly argues that the CBA and its incorporated documents "could never establish the legal duties in Patrick's case, because it does not turn on the actual field of play[.]" Dkt. 19 at 13. Thus, he argues that the CBA does not impose obligations on the NFL or Chargers to "(safely) design, construct and/or configure broadcasting logistics, run cables, place rubber mats," or "correct dangerous conditions" on the sidelines. *Id*. at 10. But Patrick wholly ignores the specific language in the CBA addressing player safety and stadium facilities. As explained above, Article 39 creates the NFL-NFLPA Field Safety Committee for establishing mandatory standards of care regarding the safety of the playing field and surrounding areas at every NFL stadium, including SoFi Stadium, with respect to "injury prevention," "improved field surface testing methods," and "other duties as the Parties

may assign." CBA, Art. 39, § 11(x). Article 39 further requires that "[e]very stadium in which an NFL game is to be played" to comply with the Mandatory Practices established by the NFL-NFLPA Field Safety Committee. *Id*., § 11(c). Both Article 39 and the Mandatory Practices mandate "visual inspection" of field surfaces (including areas "outside the boundary line") and require that surfaces surrounding the playing areas be "non-slip when contacted by a cleated shoe" and covered "with a non-slip mat or other covering that will not move under foot when contacted by a player." Mandatory Practices at 12; *see also* CBA, Art. 39, § 11(d). This Court would need to interpret those provisions to determine how they allocated responsibility among the NFL, the Chargers, or some other entity. That includes whether authorized personnel on the sidelines were sufficiently trained to comply with those standards and whether the NFL and the Chargers bore responsibility for training them.

Nor could the Court determine whether the NFL or the Chargers acted negligently without interpreting the CBA provisions establishing the Accountability and Care Committee to compile a detailed list of "responsibilities" designed to study, prevent, and protect prayers from injury. CBA, Art. 39, § 5(c)(i)-(xiii). Those responsibilities include, among others, comprehensive review of "facilities and modalities" and "establish[ing] and implement[ing] minimum standards concerning these areas." *Id.*, Art. 39, § 5(x). Whether the Chargers or the NFL—or some other entity—bore responsibility for ensuring compliance with those "minimum standards" can be ascertained only by interpreting Article 39 and its incorporated policies.

It makes no difference whether the Mandatory Practices or other minimum standards are "incorporated" into the CBA or spelled out in the main document. "Basic contract principles instruct that where a writing refers to another document, that other document . . . is to be interpreted as part of the writing." *Halbach v. Great-West Life & Annuity Ins. Co*., 561 F.3d 872, 876 (8th Cir. 2009) (citation omitted). It is axiomatic that these principles apply with equal force to labor preemption: the need for "interpretive uniformity" in documents "incorporate[d] by reference" in the CBA mandates preemption.

*Allis-Chalmers*, 471 U.S. at 220; *see Boldt v. N. States Power Co.*, 904 F.3d 586, 590 (8th Cir. 2018) (considering fitness-for-duty policy incorporated in CBA for LMRA preemption); *Maxwell v. Arkansas Power and Light Co.*, 975 F.2d 866, 1992 WL 206783, at *1 (8th Cir. 1992) (unpub.) ("Policies and Procedures Manual" that "quotes extensively from the CBA" and "is logically connected to the CBA" is not "contractually independent from the [CBA]" and preempts state-law claims); *BP Amoco Corp. v. NLRB*, 217 F.3d 869, 873-74 (D.C. Cir. 2000) (statement in a CBA that "[b]enefit plans for the Company . . . will continue in force during the life of this Agreement" incorporated plans). Here, not only does Article 39 require compliance with the *Mandatory* Practices; it also gives the NFLPA the "right to commence" a CBA grievance whenever "a player or the NFLPA allege that an NFL Stadium is *not in compliance with the Mandatory Practices*, as applicable, or any other metrics or standards set by the Field Surface Safety & Performance Committee." CBA, Art. 39, § 11(d) (emphasis added).

Apparently recognizing the binding nature of the Mandatory Practices and other CBA provisions, Patrick attempts to create a limitation in the CBA where it does not exist. Specifically, he asserts that the "CBA does not cover the geographically nearby locus of the tort." Dkt. 19 at 12, 18. But the Mandatory Practices set forth detailed requirements designed to ensure the safety of surface conditions for "[t]he entire surface of the field that a player may be expected to interact with during play, *including both end zones and the sidelines*" and "outside the boundary line." Dkt. 1-23 at 12. The Court would need to interpret these and other CBA provisions to determine whether and to what extent the NFL and Chargers assumed any duty to regulate conditions adjacent to the playing field—an essential element of Patrick's claim. *See Brown*, 571 F. App'x at 576 ("LMRA preemption replaces" tort claims where "it will be necessary for a court to interpret the terms of the CBA to determine the standard of care that [the defendant] agreed to assume").

Indeed, Patrick's efforts to avoid the application of the CBA, including the collectively-bargained Mandatory Practices, to his claims prove this point. Patrick cannot deny the existence of these specific, mandatory CBA provisions regarding field safety; he

simply argues about how these provisions should be *interpreted* in his case. But such arguments only serve to demonstrate why, at a minimum, Patrick's claims are substantially dependent on an interpretation of the CBA, which is the job for the arbitrator selected by the NFL and his Union, not for a state court jury.

Nor may Patrick escape this conclusion by asserting that, under *Dent v. National Football League*, 902 F.3d 1109 (9th Cir. 2018), "[one party's] obligations under the CBAs are irrelevant to the question of whether [the other party] breached an obligation to players by violating the law." Dkt. 19 at 10 (alterations in original). That argument ignores the Supreme Court's longstanding rule that the LMRA preempts claims where the "threshold inquiry" is CBA interpretation "to ascertain what duties were accepted by each of the parties and the scope of those duties." *Hechler*, 481 U.S. at 860; *see also Duerson v. Nat'l Football League, Inc.*, No. 12 C 2513, 2012 WL 1658353, at *4 (N.D. Ill. May 11, 2012) (If the "club had a duty to warn [the player] before allowing him to return to the field," then "it would be one factor tending to show that the NFL's alleged failure to take action to protect [the player] from concussive brain trauma was reasonable"); *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1182 (11th Cir. 2010) (negligence claim preempted where court would need to "consult the CBA to determine the scope of the legal relationship between [the parties]"). Patrick's argument is also an overreading of *Dent*, which merely held that "parties to a CBA cannot bargain for what is illegal." *Dent*, 902 F.3d at 1121. Unlike this case, the negligence *per se* claims found not to be preempted in *Dent* were premised on alleged violations of "federal and state [criminal] laws governing controlled substances" that did "not turn on how the CBAs allocated duties . . . ." *Id.*

Here, the opposite is true. Regardless of Patrick's contention that his claims are somehow independent of the CBA, the Court could not determine the relative responsibilities of the NFL and the Chargers to "maintain, inspect, warn, and repair" the "sideline areas" (Dkt. 19 at 4) without "examining the parties' legal relationship and expectations as established by the CBA and [its incorporated documents]." *Williams*, 582

F.3d at 881. Because this case *does* "turn on how the CBAs allocated duties," *Dent*, 902 F.3d at 1121, Patrick's claims are completely preempted.

### 3. The Remedies Patrick Seeks for His Alleged Injuries Are Also "Substantially Dependent" on CBA Interpretation

As explained in the NFL and Chargers' motion to dismiss (Dkt. 18 at 16-17), the remedies that Patrick seeks for his alleged injuries provides an additional basis for preemption. Thus, Patrick's Complaint seeks compensation for, among other things, medical care costs and lost salary associated with his playing injury. But, through the CBA, the parties have specifically negotiated numerous provisions addressing a player's entitlement to remedies and benefits in the event of an injury, including, among others, detailed rights to medical and rehabilitative care from qualified professionals (CBA, Art. 39); protection from the loss of salary for the duration of the injury during the season of injury (*id.*, App'x A, ¶ 9); extended salary protection following the season of injury for qualifying players (*id.*, Art. 45); and numerous other injury-related benefits post-retirement (*e.g.*, *id.*, Arts. 53, 60). The CBA also specifically requires arbitration of claims for these types of remedies (*id.*, Art. 43, § 1), including claims involving "compliance with the Mandatory Practices" (*id.*, Art. 39, § 11(d)). To determine the extent of the NFL and Chargers' liability, if any, the Court must construe these CBA provisions.

For example, Article 39 authorizes medical care for a player by his Club's physician and provides that all such care "will be the responsibility of the respective Clubs." CBA, Art. 39 § 1(e). Paragraph 9 of Patrick's collectively-bargained NFL Player Contract, which is incorporated in the CBA, provides that a player injured "in the performance of his services under [his] contract" "will receive such medical and hospital care during the term of [his] contract as the Club physician may deem necessary." *Id.*, App'x A, ¶ 9. The Contract requires that a player "continue to receive his yearly salary . . . during the season of injury" as long as he is physically unable to play as a result of his injury." *Id.*

Patrick nowhere disputes that, notwithstanding these detailed provisions that address the precise injury here, he sued the Chargers and the NFL seeking medical

expenses, lost income, and future earnings. Indeed, Patrick cannot simply ignore the parties' "complete understanding" on remedies for players injured while performing under their contracts. CBA, Art. 2, § 4(a). Instead, he asserts (ignoring the specific CBA provisions discussed above) that "nothing here imposes obligations on either the Chargers or NFL to maintain a safe premises." Dkt. 19 at 12. But "questions relating to what the parties to a labor agreement agreed, and what *legal consequences* were intended for breaches of that agreement, must be resolved by reference to uniform law . . . ." *Allis-Chalmers*, 471 U.S. at 211 (emphasis added). Patrick cannot avoid preemption by ignoring the "legal consequences" that the NFL and NFLPA negotiated. *Id.* Those CBA provisions must be interpreted to ascertain the scope of any remedies due to Patrick. *See, e.g.*, *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1459 (9th Cir. 1996) (tort claims preempted where "remedies lie in the grievance procedures set forth under the CBA"); *Navarro v. Excel Corp.*, 48 F. App'x 481, 2002 WL 31049478, at *1 (5th Cir. 2002) (preemption appropriate where "court [] would have to determine the scope of . . . [the employee's] remedies under the CBA").

    4.   <u>Patrick Cannot Distinguish the Host of Decisions Holding Similar Claims Against the NFL and Clubs Preempted</u>

Patrick also fails to distinguish the numerous federal cases that have held similar claims against the NFL and its member Clubs preempted. Moreover, the cases cited by Patrick simply confirm that his claims are completely preempted.

Patrick ignores *Smith*, *Ballard*, and *Atwater*, and contends that the CBA provisions supporting preemption in those cases are "specious" and do not apply to his claims. Dkt. 19 at 11. But those cases confirm that claims brought by NFL players alleging football-related injuries based on purported health and safety deficiencies require CBA interpretation and are subject to preemption. In *Smith*, the Court found retired players' "negligent misrepresentation" claim to be preempted because determining the extent of the NFLPA's duty to inform players about health and safety risks relating to head injuries was "substantially depend[ent] on interpretation" of duties of the Accountability and Care

Committee established under Article 39 of the CBA.  2014 WL 6776306, at *8.  Likewise, in *Atwater*, the court explained that "in determining the scope of any duty the NFL owed [players] (which is part of [the players'] affirmative case)," it would need to "consult the CBA to determine the scope of the legal relationship between [the players] and the NFL and their expectations based upon that relationship[.]"  626 F.3d at 1182.  Finally, in *Ballard*, the court held that players' claims that the NFLPA negligently hired and retained members of a committee formed to study head injuries were preempted.  123 F. Supp. 3d at 1163.  Relying on Article 39, the court explained that "[t]he CBAs contain numerous sections related to . . . a Joint Committee focused on the NFL players' safety," and the claims therefore "will necessarily depend upon an analysis of these provisions to determine whether the CBAs impose such a duty and whether they specify a standard of care."  *Id*. at 1171-72.

Patrick also fails to meaningfully distinguish *Williams v. National Football League*, 582 F.3d 863 (8th Cir. 2009).  In *Williams*, the Eighth Circuit held preempted common law negligence claims asserted against the NFL for the alleged failure to warn players about the harmful effects of a dietary supplement.  *Id*. at 881.  As here, the players asserted that the duty arose not from the CBA, "but from a duty that Minnesota law imposes on the NFL."  *Id*.  The Eighth Circuit rejected the players' argument, holding that "whether the NFL . . . owed the Players a duty to provide [ ] a warning cannot be determined without examining the parties' legal relationship and expectations as established by the CBA."  *Id*.  Patrick cannot plausibly dispute that his claims are no different; he would not have been on the sidelines but for the fact that he is an NFL player and was participating in a game under the auspices of the CBA.  Proving the point, Patrick himself acknowledges the claims in *Williams* "literally arose from directly from the CBA"—given that the players would not have participated in the "drug testing program" but for the CBA.  Dkt. 19 at 14.

Patrick's purported distinctions of *Duerson*, *Sherwin*, and *Stringer v. National Football League*, 474 F. Supp. 2d 894 (S.D. Ohio 2007), fare no better.  In all three cases, the CBAs were relevant to determining whether the NFL or its member Clubs were acting

"reasonably." *See Duerson*, 2012 WL 1658353, at *4 (if the CBA is interpreted "to impose a duty on the NFL's *clubs*," then that "would tend to show that the NFL could reasonably rely on the clubs" and "reasonably exercise a lower standard of care in that area itself"); *Stringer*, 474 F. Supp. 2d at 910 (whether the NFL acted "reasonabl[y]" requires "consider[ation] . . . of pre-existing contractual duties imposed by the CBA on the individual NFL clubs concerning the general health and safety of the NFL players"); *Sherwin*, 752 F. Supp. at 1178 ("The court cannot resolve plaintiff's claims based on inadequate medical care without interpreting the clauses establishing those duties in the agreements."). So too here. That the NFL and the Clubs raised LMRA preemption as a defense in *Duerson*, *Sherwin*, and *Stringer*—rather than a basis for federal jurisdiction— is not a relevant distinction. The LMRA "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim . . . .'" *Curtis*, 913 F.3d at 1152 (quoting *Metro. Life*, 481 U.S. at 65). Moreover, the assertion of preemption here is not an affirmative defense; it applies because CBA interpretation is plainly required to assess the extent of any duty owed by the NFL or the Chargers, and whether they acted reasonably, regarding the safety of the field—an element of Patrick's *affirmative* case.

None of the cases cited by Patrick changes that conclusion. For example, *Bush*— decided well before the current mandatory provisions under Article 39 of the CBA took effect—merely held that a "player safety" committee, which lacked the "power to commit or bind any of the signatories" did not, without more, warrant a finding of preemption. *Bush v. St. Louis Reg'l Conv.*, No. 4:16CV250, 2016 WL 3125869, at *4 (E.D. Mo. June 3, 2016). The court in *Fowler* similarly held that a safety committee established by a CBA did not preempt tort claims when the committee's "recommendations are only advisory, leaving final authority over the premises with the clubs." *Fowler v. Ill. Sports Facilities Auth.*, 338 F. Supp. 3d 822, 827-28 (N.D. Ill. 2018). Patrick himself recognizes that the players' claims in *Bush* and *Ryans* would be "far stickier" under "the present CBA" because it sets forth *mandatory* standards for playing surfaces. Dkt. 19 at 18 (citing *Bush*

and *Ryans v. Houston NFL Holdings, L.P.*, No. 4:16-CV-3554, 2017 WL 1905774 (S.D. Tex. May 9, 2017)).  That the advisory opinions of the safety committees in these cases did not "affect" the team's "duty of care" to the player, *Fowler*, 338 F. Supp. 3d at 828, has no bearing on Patrick's claims or the mandatory nature of the CBA provisions at issue here.

Nor is it relevant that the claims in *Tynes*, *Jurevicius*, and *McPherson*—involving non-football activities—were found to be independent of the CBA.  Patrick cannot plausibly dispute that *his* claims are based on an injury he allegedly sustained while playing football under his NFL Player Contract.  Unlike Patrick's claims, *Tynes* and *Jurevicius* involved claims that players contracted staph infections from their Clubs' training facilities as a result of negligence by Club trainers, doctors, and other parties who maintained those facilities.  *See Tynes v. Buccaneers Ltd. P'ship*, 134 F. Supp. 3d 1351, 1357-58 (M.D. Fla. 2015); *Jurevicius v. Cleveland Browns Football Co., LLC*, No. 1:09-CV-1803, 2010 WL 8461220, at *12-14 (N.D. Ohio Mar. 31, 2010).  *McPherson* involved a negligence claim against the Tennessee Titans for injuries a player sustained when the Club mascot ran over him with a golf cart during halftime.  *See McPherson v. Tenn. Football Inc.*, No. 3:07-0002, 2007 WL 5445124 (M.D. Tenn. May 31, 2007).  As with *Jurevicius* and *Tynes*, the player did not sustain injuries while playing football.  *Id.*

In any event, to the extent the cases on which Patrick relies suggest that tort claims arising from football injuries somehow avoid preemption, those cases cannot be reconciled with numerous decisions finding similar claims preempted even under older versions the CBA.  But regardless, the CBA at issue here—negotiated well after every case cited by Patrick—contains and incorporates numerous "binding" provisions negotiated with the express purpose of issuing mandatory policies on "injury prevention" and "field performance/playability."  CBA, Art. 39, §§ 11, 12.  Unlike Patrick's cases, those *mandatory* policies are compulsory for "[e]very stadium" in the NFL, *id.*, Art. 39, § 11(c), and expressly allowed Patrick and his union to initiate grievances alleging that any stadium where he played was "not in compliance," *id.*, Art. 39, § 11(d).  It makes no

difference that the nonbinding provisions at issue in cases like *Bush* did not "establish a contractually agreed upon standard of care." *Bush*, 2016 WL 3125869, at *4. Patrick cannot avoid preemption by ignoring the mandatory CBA provisions that actually apply to his claims.

In short, the necessity of CBA interpretation in this case is not only clear from the numerous provisions cited in the NFL and Chargers' motion to dismiss, but indistinguishable from the many cases finding that common-law causes of action against the NFL and Clubs cannot be decided without interpreting CBA provisions. For both reasons, Patrick's complaint is completely preempted by the LMRA.

## IV. **CONCLUSION**

For all these reasons, the Court should deny Patrick's motion to remand (Dkt. 19) and grant the NFL and Chargers' motion to dismiss (Dkt. 18).


Dated: March 31, 2023   AKIN GUMP STRAUSS HAUER & FELD LLP


        By: */s/ Victor A. Salcedo*
           Victor A. Salcedo
           Attorney for Defendants
           NATIONAL FOOTBALL LEAGUE and
           THE LOS ANGELES CHARGERS

DEFENDANT NATIONAL FOOTBALL LEAGUE AND LOS ANGELES CHARGERS' OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants NATIONAL FOOTBALL LEAGUE and THE LOS ANGELES CHARGERS, certifies that this brief contains 6,838 words, which:

        ⊠ complies with the word limit of L.R. 11-6.1.

        ☐ complies with the word limit set by court order dated [date].


Executed on March 31, 2023, at Los Angeles, California.


Victor A. Salcedo               */s/ Victor A. Salcedo*
[Print Name of Person Executing Proof]      [Signature]