1
2
3
4
5
6
7

**BERMAN & RIEDEL, LLP**
William M. Berman, Esq., CA State Bar No.: 190078
    e-Mail: wberman@bermanlawyers.com
12264 El Camino Real, Suite 300
San Diego, California 92130
phone: (858) 330-8855 • fax: (858) 330-9855

**BRAD SOHN LAW**
Bradford R. Sohn, Esq., FL State Bar No.: 98788 (CA Admission Pro Hac Vice)
    e-Mail: brad@bradsohnlaw.com
2990 Ponce De Leon Boulevard, Suite 300
Coral Gables, Florida 33134
phone: (786) 708-9750 • fax: (305) 397-0650

8        Attorneys for Plaintiff AARON PATRICK

9

10

11                 **UNITED STATES DISTRICT COURT**

12                 **CENTRAL DISTRICT OF CALIFORNIA**

13                      **WESTERN DIVISION**

| | |
|---|---|
| AARON PATRICK, an individual, | Case No.:  2:23-cv-01069-DMG (SHKx) |
| as Plaintiff, | District Judge:  Hon. Dolly M. Gee |
| v. | Magistrate Judge:  Shashi H. Kewalramani |
| NATIONAL FOOTBALL LEAGUE, a business entity; STADCO LA, LLC d/b/a SOFI STADIUM, a business entity; HOLLYWOOD PARK LAND COMPANY, LLC, a business entity; STOCKBRIDGE CAPITAL GROUP, LLC, a business entity; THE FLESHER GROUP, a business entity, KROENKE SPORTS & ENTERTAINMENT COMPANY, a business entity; CHARGERS FOOTBALL COMPANY, LLC d/b/a THE LOS ANGELES CHARGERS, a business entity; MOE "GREENHAT," an individual; ESPN, INC., a business entity; ROE MAT COMPANY, a business entity; and DOES 1-40, inclusive, | **PLAINTIFF AARON PATRICK'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**<br><br>Courtroom: 8C, 8th Floor<br>Date:      May 5, 2023<br>Time:      9:30 a.m.<br><br><br><br>Date Action Filed: November 15, 2022<br>*(Los Angeles County Superior Court, Case No.: 22TRCV01260)* |
| as Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS …………………………………………………........ i

TABLE OF AUTHORITIES ……………………………………………… ii, iii

MEMORANDUM OF POINTS AND AUTHORITIES………..…………………………….... 1

INTRODUCTION…………..……………………………………………….... 1

I.   HOW DID THE CHARGERS ARGUE PREEMPTION?…….…....……………...…… 1

II.   HOW CAN UN-PLEAD ALLEGATIONS BE "UNDISPUTED?" ……………………… 2

III.  CAN DOCUMENTS EXTRINSIC TO THE CBA EVEN BE CONSIDERED? ………...…. 3

IV.  WHAT EXACTLY ARE NON-FOOTBALL-ACTIVITY CASES? …………………….. 6

V.   IS DEFENDANTS' SUBSTANTIAL DEPENDENCE TEST VALID? ……………….... 7

CONCLUSION ………………………………………………………… 11

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Alaska Airlines v. Schurke*,
  898 F.3d 904 (9th Cir. 2018) ……………………………………………… 1

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ……………………………………………….... 5

*Atwater v. NFLPA*,
  626 F.3d 1170 (11th Cir. 2010) …………………………..……………… 10

*Boldt v. N. States Power Co.*,
  904 F.3d 586, 590 (8th Cir. 2018) ……………………...……………… 5

*BP Amoco Corp. v. NLRB*,
  217 F.3d 869 (D.C. Cir. 2000) ……………….……..……………… 5

*Brown v. Brotman Med. Ctr., Inc.*
  571 F.App'x 572 (9th Cir. 2014)…………………………………… 6

*Brown v. Nat'l Football League*,
  219 F.Supp. 2d 372 (S.D.N.Y. 2002) ……………………………….. 10

*Bush v. St. Louis Reg. Conv. & Sports Complex Auth.*,
  No. 04-cv-250-JCH, 2016 WL (E.D. Mo. Jun. 3, 2016) ……………… 6

*Caterpillar v. Williams*,
  482 U.S. 386 (1987) ………………………………………………… 3, 4

*Dent v. NFL.*,
  902 F.3d 1109 (9th Cir. 2018) ……………….………………… 7, 8, 9, 10

*Duerson v. Nat'l Football League*,
  12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ……………… 9

*Fowler v. Illinois Sports Facilities Authority*,
  338 F.Supp. 3d 822 (E.D. Ill. 2018) ……………………………… 6

*Green v. St. Louis Cardinals Football Club*,
  21 F. Supp. 3d 1020 (E.D. Mo. 2014) ………………………………… 9

*Halbach v. Great-West Life & Annuity Ins. Co.*,
  561 F.3d 827 (8th Cir. 2009) ………………………………….. 4, 5

*Int'l Bhd. of Elec. Workers v. Hechler*,
  481 U.S. 851 (1987) ……………………………………………….. 10

*Jurevicius v. Cleveland Browns Football Co. LLC*,
  No. 09-cv-1803, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010) ………… 6

*Knight v. Jewett*,
  3 Cal. 4th 296 (1992) ……………………………………………… 8

*Livadas v. Bradshaw*,
    512 U.S. 107, 122-23 (1994) ……………………………….……… 11

*Maxwell v. Arkansas Power and Light Co.*
    975 F.2d 866, 1992 WL 206783 (8th Cir. 1992) (unpub.) ………………… 5

*McPherson v. Tennessee Football, Inc.*,
    No. 07-cv-0002 (M.D. Tenn. 2007) ……………………………………… 6

*Meyer v. Schnucks Mkts., Inc.*,
    163 F.3d 1048 (8th Cir. 1998) …………………………………………… 5

*Oliver v. Riddell, Inc.*,
    No. 16-cv-4760, 2016 WL 7336142 (N.D. Ill. Jul. 19, 2016) (unpub.)…..…… 2

*Ryans v. Houston NFL Holdings, L.P.*,
    No. 16-cv-3554, 2017 WL 1905774 (S.D. Tex. May 9, 2017) ……........ 2, 3, 6

*Stringer v. Nat'l Football League*,
    474 F.Supp. 2d 894, 909 (S.D. Ohio 2007) ………………………….. 1, 5, 6, 8

*Tynes v. Buccaneers Ltd. P'ship*,
    134 F. Supp. 3d 1351 (M.D. Fla. 2015) ……………………………….... 6

**STATUTES**

Labor Management Relations Act, 29 U.S.C. § 301…………………… 1, 2, 4, 5, 10, 11

# INTRODUCTION

As Plaintiff Aaron Patrick's moving papers (D.E. 19 ("Mot.")) demonstrated, his claims neither arise from, nor substantially depend upon the Court's interpretation of any specific CBA term. Rather than address Patrick's actual claims and arguments, the NFL and Chargers' brief (D.E. 39 (Opposition to Motion to Remand (the "Opposition" or the "Opp.")) ignores, invents, mischaracterizes, and distorts. On Reply, Patrick highlights the questions he submits will assist the Court in rejecting the subterfuge, so that it can ultimately grant his Motion to Remand.

## I.    HOW DID THE CHARGERS ARGUE PREEMPTION?

The Chargers purported to jointly remove under the LMRA along with the NFL. **But then they punted on their burden**. They, too, needed to have identified CBA provisions that Patrick's claims either arose from or that the Court would have needed to interpret to assess *the Chargers*' duty of care. They never do so because … they *cannot*. As Patrick's Motion pointed out (10:8-12; 11:13-20), none of the provisions identified so much as mentions obligations of the clubs (or teams). In response, the Chargers say … *nothing*; they have simply tried camouflaging themselves within the NFL's preemption argument.  But complete preemption does not permit the Chargers to simply raise up the NFL's forum-preemption defense as their own. Rather, it requires a "case-by-case" analysis comparing each claim to the complaint, as one of Defendants' own authorities makes clear.[1] *See Alaska Airlines v. Schurke*, 898 F.3d 904, 933, n.4 (9th Cir. 2018). In fact, the *Stringer* Court admonished a very similar tactic as being "without merit." *See, e.g.*, *Stringer v. Nat'l Football League*, 474 F.Supp. 2d 894, 914-15 (S.D. Ohio 2007) (rejecting a tag-along

---

[1] This is no different than what co-Defendant ESPN would have needed to do in the event that it had attempted to assert federal subject-matter jurisdiction. The Chargers have their own burden to carry. Permitting the Chargers to merge their defense into the NFL's based on their naked conclusion in the Notice of Removal that the "claims against the NFL and Chargers cannot be resolved without construing CBA provisions" (D.E. 1 at ¶ 16) to which they lack any nexus at all would be as erroneous as permitting ESPN (or the Chargers or the NFL) to invoke a workers' compensation exclusivity defense that only the (non-party) Denver Broncos would hold as Patrick's employer.

LMRA defense because there were no CBA obligations on the Defendant nor was there any *substantial* interpretive dispute inextricably intertwined to those claims jointly asserted against them alongside the NFL). Doing so would be even more obviously problematic with the premises liability claim asserted as to the Chargers, because the NFL is even not included within this count for the Chargers to hide behind. *C.f. Oliver v. Riddell, Inc.*, No. 16-cv-4760, 2016 WL 7336142 at *3-5 (N.D. Ill. Jul. 19, 2016) (remanding claims asserted solely against a defendant with no "restrictions imposed [on it by the NFL's CBA]" where Defendant sought to assert the NFL's LMRA defense) (*unpub*). The non-response by the Chargers is a concession-by-omission, and reveals, at a bare minimum, that Patrick's claims unquestionably proceed, at least as to the Chargers.

## II.    HOW CAN UN-PLEAD ALLEGATIONS BE "UNDISPUTED"?

Next, it is important to clarify what Patrick's Amended Complaint actually avers as well it as what it does not, in light of Defendants' eggregious attempt to pass off an allegation Patrick never plead—at all—as "undisputed." Opp. at 1:2. They have jaw-droppingly made up from whole cloth that Patrick's Amended Complaint "openly alleges" (*id.* at 8:14) that he sustained injury *while* attempting (*id.* at 4:6) to make a tackle, and that this injury occurred *when* (*id.* at 4:5) his momentum carried him off of the field. This is far from undisputed; it is both simply not true and also highly misleading. Brazenly, Defendants have frankensteined their own language onto Patrick's Amended Complaint, likely to make their field-surface testing and maintenance-manuals argument more plausible. But the actual complaint very clearly alleges that the injury occurred "immediately following the play." (D.E. 1-3 at ¶ 15; *see also id.* at 3 (photos revealing that the events occurred directly outside the floor-level luxury boxes as opposed to directly off of the field of play)). Again, no part of Patrick's claim concerns his foot catching on a negligently-maintained or unreasonably-slick artificial grass field-surface, *e.g.*, *Ryans v. Houston NFL Holdings, L.P.*, No. 16-cv-3554, 2017 WL 1905774 at *1 (S.D. Tex. May 9, 2017)

(claims concerning achilles injury from allegedly negligent use of dangerous artificial grass surface not preempted.) If anything, those manuals address a *Ryans* claim. This injury occurred "off the field of play" and "beyond the sideline." D.E. 1-3 at ¶ 15.

## III.   CAN DOCUMENTS EXTRINSIC TO THE CBA EVEN BE CONSIDERED?

The Defendants also ignore Patrick's objection to a *lawyer's* declaration that seeks to do far more than merely authenticate the field-surface testing and maintence manuals, by proposing a critical factual characterization[2] of them, *i.e.*, that they have been incorporated by reference into the CBA. Mot. at 8:26-28. We noted this to be improper, and Defendants have tellingly danced away from their counsel's original assertion. Their revamped argument still ignores the related analysis Patrick offered regarding *Caterpillar's* treatment of this issue. *Id* at 8:15-21; *see also* D.E. 38 (Opp. to Defs' Mot. to Dismiss (the "Opp. to MTD") at 4:9-4:17). Defendants cannot transmogrify the CBA's fleeting reference to artificial-turf regulations into the wholesale *incorporation* of those separate documents (leaving aside that the claims do not depend on the Court construing them at all) without proof they are fully integrated. Their Opposition (at 11:22) now concedes this (as it must), but attempts to dismiss the glaring problem as "mak[ing] no difference." In fact, it makes a material

---

[2] Leaving aside these documents' (ir)relevance to Patrick's claims, were this declaration from an NFL lawyer, after deposing such a declarant, an argument that the documents were incorporated—all of which existed prior to their receiving any mention in a CBA (*see* Opp. to MTD at 4:25 (*discussing Ryans*))—*might* at least be validly entertained. But here, Defendants offer a declaration from outside counsel, who does not and cannot affirm *personal knowledge of the club's or league's business records*. This is a pure-attorney-argument characterization of these documents; it should carry no evidentiary weight; the documents should be ignored without (heretofore absent) proof they are part of the CBA.

difference[3]; the Court can **only** consider the CBA[4] against the Amended Complaint within its remand analysis, likely why Defendants attempted to pass these off as integrated before later abandoning ship in favor of yet another tactic.

Their Opposition (at 11:22) dodges our point with sleight of hand, recrafting the inquiry as "whether the Mandatory Practices or other minimum standards [we]re 'incorporated' into the CBA or spelled out in the main document"; but this gets it squarely backward. They have invoked documents facially extrinsic to a CBA to support a CBA/LMRA-forum-preemption defense. If the facially separate documents are not fully "spelled out" in the CBA—or as they slyly call it, the *main document* (implying that an amalgamation of documents could constitute the *actual* CBA)—and the CBA only mentions them (*see id.* at 11:22-23, *citing* DE 1-23 at 12), then the Court can't consider them. The Court would first need to deem these incorporated by reference into the CBA to consider them.

This is precisely *and only* what every authority Defendants rely upon actually holds. But Defendants overstate the holdings, suggesting their cases go a step further, *i.e.*, that they bless the legal propriety of considering documents referenced but *not* formally incorporated by reference within an LMRA preemption analysis.[5] Most

---

[3] The Supreme Court authorities and others Defendants cite to (at 11:22-12:25) have previously analyzed documents incorporated into CBAs by reference as part of a preemption analysis. But the law has long held Courts must decline invitations to do this where documents are separate, even if arguably related. *See Caterpillar v. Williams*, 482 U.S. 386, 388, 390 (1987) ("The question presented is whether respondents' state-law complaint for breach of individual employment contracts is completely pre-empted by § 301 of the Labor Management Relations Act … and therefore removable …" or whether, as the removing Defendant contended, the "individual employment contracts made with respondents 'were, as a matter of federal substantive labor law, merged into and superseded by the ... collective bargaining agreements.'")

[4] It is of course a separate question whether what Defendants trumpet as supposedly "mandatory practices" actually created any greater or lesser level of reasonableness *relevant to Patrick's claims* that the Defendants need to have followed when placing television production items and personnel.

[5] In support, they lead with an ERISA preemption case. *Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 827, 876 (8th Cir. 2009). In *Halbach*, the plaintiffs sued claiming that a disability plan amendment violated the overall plan's terms and ERISA itself. There, the Court considered a letter mailing out this proposed plan amendment, and indeed did so because the "… **incorporated** matter is to be interpreted as part of the writing." (*Emphasis added*.) That is, *Halbach* considered an

---

favorably stated for Defendants, some of these cases might be described as illustrating that where allegations within tort claims themselves make affirmative reference to documents potentially deriving from CBAs, the nature of claims plead in this fashion would trigger analysis into whether the given CBA actually gave rise to such a document (and whether such a document should therefore be deemed incorporated, and therefore considered). *E.g.*, *Stringer*, 474 F.Supp. 2d at 903-06.

In *Stringer*, which Defendants present elsewhere as an example of LMRA preemption, the widow of a football player who died on the field from heat-stroke plead a claim that affirmatively invoked the NFL's "Hot Weather Guidelines". This required the Court to analyze whether the guidelines derived from the CBA (which

---

extrinsic document that the Plaintiff's claim directly relied on as the legal source for its duty after finding the document was, in essence, a CBA term. Their next case, *Boldt v. N. States Power Co.*, 904 F.3d 586, 590 (8th Cir. 2018) (considering fitness-for-duty policy ***incorporated into the CBA*** for LMRA preemption) fares no better, merely holding that "[a] substantially dependent claim under the LMRA is one that 'require[s] the interpretation of some specific provision of' a collective-bargaining agreement, *Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998), ***including any documents incorporated by reference***, *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204, 214–21, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).) (*Emphasis supplied.*)' Thus, if an agreement incorporates an employee handbook or employee-benefit policy by reference, the need to interpret those other documents in adjudicating a claim might also give rise to complete preemption." *Boldt* proceeds into its substantially-dependent analysis, noting that the parties both focused on a CBA provision "which incorporates all of the policies … including its fitness-for-duty rules …" That is, the parties mutually agreed that the CBA language impacted the claim at issue. In contrast to here, where there is no mutual agreement that the language even relates to the claim. The unpublished citation, *Maxwell v. Arkansas Power and Light Co.*, likely appears to be an example of *arising-from* 301-preemption. 975 F.2d 866, 1992 WL 206783, at *1 (8th Cir. 1992) (unpub.) Although *Maxwell's* single paragraph of cursory analysis does not squarely addresses whether the document at issue was or was not incorporated by reference into the CBA, the Court noted that the *Maxwell* Plaintiff's ***affirmative claim*** concerned a manual that "quotes extensively from the CBA", and that "[wa]s logically connected to the CBA" and therefore found the claim to be inextricably intertwined with the CBA. Here, there can be little argument that Patrick's complaint makes not even the vaguest of references to the contents of the field-surface maintenance manual; it does not arise from the CBA. Most curiously of all, *BP Amoco Corp. v. NLRB*, 217 F.3d 869, 873-74 (D.C. Cir. 2000) has nothing to do with 301 preemption. In *BP*, the D.C. Circuit reviewed an NLRB decision concerning whether the parties to a CBA had "negotiate[d] 'a provision in a collective bargaining contract that fixes the parties' rights and forecloses further mandatory bargaining as to that issue." *See id*. Even in this analytically distinct context, the Court found CBA coverage for the dispute, but considered it because that document's terms were indeed "incorporated by reference." In essence, Defendants are presuming the truth of their conclusion (that the documents are part of the claims) and working backward.

they did not, leading the *Stringer* Court to permit the state-law claims). But in this case, it is undisputed (in the traditional sense of this term, *compare with discussion supra*, at 1:25) that Patrick makes no affirmative reference to any manual. The CBA's mention of the artificial grass field-surface manuals merely covers their overall purpose (*see* CBA Art. 39 Sec. 11(a) (to "advise the parties … regarding [] field surface testing methods [] to evaluate and improve field surface testing … improve field surface performance / playability (e.g, metrics to gauge minimum softness; quantitative cover ratings; measuring head impact critera …") Those items clearly have zero relationship to Patrick's affirmative case; they are, at best, factually-overlapping fodder for a CBA defense assertible in state court, if that.

## IV.   WHAT EXACTLY ARE *NON-FOOTBALL-ACTIVITY* CASES?

Defendants (18:6-18) also ignore the points actually being made by Patrick (Mot. at 12:13-13:10, 18:7-19) in citing to a host of cases addressing the NFL's CBA where courts declined to pre-empt the claims and granted remand. By implication, Defendants make the superficially seductive argument that these authorities should be disregarded for the reason that they concern "non-football activities." This manufactured distinction, conspicuously absent from any court's analysis, could be summarily rejected simply due to the host of *football-related-activity* cases which both parties cite to, and which reveal numerous claims arising from on-field incidents held to *not* be LMRA-preempted. But beyond that, this is another straw man. The two critical points Patrick makes through these cases have nothing to do with football-relatedness (or lack thereof): (1) that simply glomming potentially-factually-overlapping CBA language onto state law claims leads to remand, not preemption; and (2) that mere "advice" and "guidance" contemplated by CBA Sections within Article 39 does not trigger preemption. Mot. at 18:7-19:19. That is as true in *Tynes* and *Jurevicius* and *McPherson* (the purported non-football-activity cases) as it is in *Bush* and *Ryans* and *Brown* and *Fowler*. *See* Mot. 16:21-19:19; *see also* Opp. to MTD at 12:16-23. And the same is true here.

## V.     IS DEFENDANTS' *SUBSTANTIAL DEPENDENCE* TEST VALID?

Stripping away the distraction of the "no-duty rule" cases, Defendants have performed all remaining gymnastics replied to in this brief to create the incorrect factual-legal atmospherics that, in essence, *Patrick himself admits he suffered injury <u>while</u> playing football on a field required to conform with the football industry's standards, and his tort rights to complain about this issue are tied up by the pro football industry which has contractually commingled numerous obligations, and gives him plenty of money anyway for other things*; on the back of this false syllogism comes their proposed and deeply analytically flawed substantially-dependant test. We debunk that here.

As a threshold matter, the Opposition (at 10:18) oddly contends that Patrick does not actually address substantial dependence and "seeks to change the subject." *But see* Mot. at 10:6-13:28 (laying out the state law duties of care, the total absence of any claim's relationship to the CBA, and demonstrating the nature of Patrick's proofs to clarify these would similarly have nothing to do with the CBA). Again, it is true he noted that the claims do not turn on the "actual field of play" (Opp. at 10:20), but this point responded to Defendants' factually infirm reliance on artificial-playing-field-turf standards to preempt broadcast-equipment claims. Patrick has not "wholly ignore[d]" (*id*. at 10:24) the CBA language Defendants point to in the sense of dodging those standards. Rather, his affirmative case can proceed without referencing them, regardless of if or how these might be interpreted.[6]

Ostensibly for this exact reason, Defendants' Opposition ignores the clear legal standard reiterated in *Dent* to sustain a substantially-dependant 301-preemption argument, *i.e.*, that there be an "active", specific, non-hypothetical dispute. Mot. at

---

[6] Patrick has not "attempt[ed] to create a limitation in the CBA where it does not exist[]" (Opp. at 12:15) through his assertion that the CBA does not "cover the geographically-nearby locus of the tort." *See id.* (quoting Mot. at 12:6). This statement seeks to emphasize the fact that the field-surface maintenance manuals, beyond being improper to consider on remand, and beyond covering topics alien to Patrick's claims, are irrelevant for the additional independent reason that the torts do not concern the game-field and playing areas.

7:11-23. Strataspherically applying concepts or generalized topics like "safety" (Opp. at 10:16) does not suffice; the interpretive dispute must be "specific", *e.g.* Mot. at 18:25-28. Hence Defendants' false insistence that Patrick must use (but supposedly ignores, Opp. at 10:23-11:21) sections within Article 39 to establish the "scope of any duty" of care. But this sorely misses the point of *Dent*. As a starting point, Patrick has demonstrated common law duties[7] establishing his standard of care (Mot. at 10:2-5), illustrating that these derive from California law by aptly pointing out that "… *any* invitees—stadium security, media members, or even fans given access to the field area—tripping on the matters or personnel could see these very defendants for identical failures …" His affirmative case does not turn whatsoever on how the NFL managed its field surfaces for playing an actual football game. (Clearly, a security person or photographer could never be owed a duty to ensure safe playing-field surfaces.) Rather, Patrick invokes a duty that "came into being" long before, and that stands apart from the CBA by applying with equal force to everyone in the area. Opp. to MTD at 12-13 (*citing Stringer v. Nat'l Football League*, 474 F.Supp. 2d 894, 908 (S.D. Ohio 2007)). Defendants do not show otherwise. Instead, although they *hypothesize* various CBA obligations that Patrick's claims could abut or *factually overlap* with, nothing shows that Patrick's claims *necessarily* overlap with these.

Central to Defendants' hypothesized/counterfactual scope-shaping argument is the notion foreclosed by *Dent* that one party's tort obligation cannot be analyzed without considering how the labor contract alters it. Thus the Opposition (13:5-23) is finally forced to acknowledge *Dent* for the first time on this point, and attempts to re-cast it. Their attempt notably leaves the language in *Dent* unaddressed that squarely rejects the argument that the CBA impacts one Defendant's tort-duty by delegating

---

[7] The "no-duty rule" holdings are inapposite, given the nature of Patrick's claims. *See* Opp. to MTD at 8:1-27. Moreover, Defendants (Opp. at 9:21-10:6) raise up yet another straw man in rebutting Patrick's contention that the breached legal duties at issue apply with equal force to non-football-players. *Knight* concerned injury *to a participant* in a touch football game. Patrick's point that Defendants owe the identical legal duty to a non-participant (photographer, fan, security person, etc.) is neither governed by *Knight* nor responded to in the Opposition brief.

certain responsibilities to another CBA-party. Mot. at 10:24-28. Moreover, the *Dent*-rejected argument they attempt here was also the precise basis for an Illinois District Court's finding of preemption over one claim in the earlier-decided *Duerson.* That is, *Duerson* almost certainly would have been decided oppositely under *Dent*, and Defendants stubbornly cite to it again without addressing this point made by Patrick. *See* Mot. at 14:20-25.[8]

The Opposition presents the critical holding of *Dent* as being limited only to negligence *per se*, by arguing that the Ninth Circuit merely held various state statutes would not require determining what they interchangeably call shaping the scope and "relative rights and responsibilities." Opp. 10:15. The problem of course is what *Dent* actually holds. True, *Dent* (902 F.3d at 1118) does address negligence duties borrowed from statute. But the Opinion continues for a number of additional pages that Defendants ignore. In *Dent*, too, these same Defendants attempted, through some of the same counsel, to argue that "assessing the scope of the NFL's duty would require interpreting CBA provisions related to medical care, including those that give players the right to access medical facilities, view their medical records, and obtain second opinions." *Dent*, at 1123-24. But the Ninth Circuit rejected this principle, holding that "California law does not require a detailed weighing of various parties' responsibilities ..." in concluding that state tort law was not impacted by Article 39 of the NFL's CBA. *Id.* Just the same, the NFL and Chargers obligations to make sure *anyone* didn't trip over broadcast equipment is not impacted by CBA provisions endeavoring to prevent players from injuring themselves on overly slippery or hard

---

[8] *Dent* is no outlier. In *Green v. St. Louis Cardinals Football Club LLC*, 21 F.Supp. 3d 1020, 1027-28 (E.D. Mo. 2014), that Court, too, rejected the shape-the-scope argument in granting remand. The *Green* Court held that were the Defendant contending that its CBAs "establish a contractually agreed upon standard of reasonableness less stringent than what would be applied in the absence of the contracts[,] even were that the case, **the terms of the CBAs would not be part of the plaintiffs' claims**, which derive from and can be adjudged in accordance with standards set forth in the Missouri common law. **Rather, they would be a defense to liability**, since the operation of the CBAs would be a "reason why the plaintiff should not recover." *Id.* (*Emphasis added.*)

9
PLAINTIFF AARON PATRICK'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

artificial grass, nor by weighing the NFL's responsibility against anothers; perhaps that is a valid contractual indemnity question, but it is not a valid tort principle applicable to LMRA preemption.

In so arguing, the Opposition (at 13:11) alternatively holds up *Hechler* as standing for the shape-the-scope argument forclosed by *Dent*'s binding precedent. But they critically omit mention of the *Hechler* Plaintiff's concession that "the nature and scope of the duty of care [owed] her is determined by reference to the collective bargaining agreement." *See id.* (*citing Hechler* at 481 U.S. at 854). This is critical, as clearly "…Patrick offers no similar concession." Mot. at 15:28. Similarly, too, with *Atwater v. NFLPA*, 626 F.3d 1170, 1184-85 (11th Cir. 2010), a summary judgment case addressing the LMRA affirmative defense that can be asserted in state court, Defendants slice the onion too thinly. The program at issue in *Atwater* was a literal creature of the CBA, in a fiduciary-duty class claim asserted against the union itself. *Id*. at 1184. The reasoning from *Brown v. Nat'l Football League* we have provided elsewhere (Opp. to MTD at 9:17-28) explains this distinction well. Like *Brown*, here the Defendants are *not* "labor unions [who] only accept such a duty of care through a contractual arrangement." *Brown*, at 381. The Defendants here owe Patrick the same duty as they owe to "… non-members, simply as ordinary members of society." *Id*.

Finally, only six pages after making the inescapable concession that "[n]egligence and premises liability claims are completely preempted by the LMRA when interpretation of a collective bargaining agreement is required **to ascertain the existence of a 'duty of care'** …" (*see* 8:4-6) (*emphasis added*), Defendants persist in arguing that the Court would need to construe various CBA provisions providing *non-tort remedies* "[t]o determine the extent of the NFL and Chargers' **liability** …" Opp. at 14:5-18. This is simply not the law or accurate. We have addressed the factual nature of remedies, the fact that these are remedies for things other than personal injury claims, and the fact that the Defendants cannot point to a single instance of a court preempting based on the NFL's remedial provisions. Mot. at 12:13-13:10. The

remedy for Patrick's personal injury claim is created by California law. Patrick has alleged non-economic damages (*i.e.*, pain and suffering) and economic damages, those largely being impairments to his past and future earnings. The performance-pool earnings Patrick lost from his existing contract as well as the extent to which any future earnings have been impaired are questions that an expert will opine on. The notion that a court would be "required" to "interpret" a "specific" remedial provision impacting the duty to place cables non-negligently is not even a colorable one. *C.f. Livadas*, 512 U.S. at 125 (holding that a CBA's relevance to "damages computation" did not justify 301 preemption.) Patrick's claim, not merely the factual question of *resultant damages* would have needed to concern one of these provisions, something that seems impossible. Finally, the Chargers are not his employer and the NFL is not *contractually* obligated under the CBA to pay him *tort* damages; this would be paradoxical.

## **CONCLUSION**

Accepting Defendants' preemption arguments would require attributing allegations to Patrick that he simply did not plead, comparing those unplead allegations to a document not actually part of the CBA, superimposing a fantasy-version of the applicable law over this artifice, and permitting the Chargers to enjoy the NFL's LMRA defense. In fact, there is zero case to be made for LMRA preemption as to the Chargers, and the NFL's case fares no better. Thus, there is simply no federal subject-matter jurisdiction over Patrick's actual claims, either as to the NFL or Chargers; they derive solely from the same California common law obligations that would control a security guard's claims had he fallen over the same

///

///

///

///

///

1  cords and cables and therefore, the Court must remand.

2      Wherefore Plaintiff Aaron Patrick respectfully asks this Court to GRANT his

3  Motion (D.E. 19) and to provide any other relief that it deems just and proper.

4      Respectfully submitted,

5  DATED: April 14, 2023          BERMAN & RIEDEL, LLP

6                                 BRAD SOHN LAW

7                                 By:  /s/ *William M. Berman*

8                                     William M. Berman, Esquire
                                      Attorneys for Plaintiff AARON PATRICK
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff AARON PATRICK, certifies that this brief contains 4,278 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated [date].

Executed on April 14, 2023, at San Diego, California.

William M. Berman                                   /s/William M. Berman

[Print Name Of Person Executing Proof]                    [Signature]

13

CERTIFICATE OF COMPLIANCE