UNITED STATES DISTRICT COURT    **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 23-1069-DMG (SHKx)** | Date | September 21, 2023 |

| | | | |
|---|---|---|---|
| Title | ***Aaron Patrick v. National Football League, et al.*** | Page | 1 of 10 |

Present: The Honorable       DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO DISMISS [18] AND PLAINTIFF'S MOTION TO REMAND [19]**

On January 3, 2023, Plaintiff Aaron Patrick filed the operative First Amended Complaint ("FAC") in the Los Angeles County Superior Court, alleging negligence and premises liability claims against Defendants National Football League ("NFL"); Stadco LA, LLC d/b/a SoFi Stadium; Hollywood Park Land Company, LLC; Stockbridge Capital Group, LLC; The Flesher Group; Kroenke Sports & Entertainment Company; Chargers Football Company, LLC d/b/a The Los Angeles Chargers; Moe "Greenhat"; ESPN, Inc.; and Roe Mat Company.[1]  *See* Ntc. of Removal, Ex. 2 (FAC) at 2 [Doc. # 1-3].  Defendants timely removed this case on February 13, 2023, alleging that Patrick's claims are completely preempted under section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. section 185(a).  Ntc. of Removal ¶¶ 8–18 [Doc. # 1].

On February 21, 2023, Patrick filed a motion to remand and Defendants NFL and Chargers[2] filed a motion to dismiss.  [Doc. ## 18 ("MTD"), 19 ("MTR").]  The motions are fully briefed.  [Doc. ## 38 ("MTD Opp."), 39, 40, 41 ("MTD Reply").]

Having duly considered the parties' written submissions, the Court **GRANTS** Defendants' MTD and **DENIES as moot** Patrick's MTR.

---

[1] Patrick has subsequently dismissed The Flesher Group from the action and added an additional entity, Pincay Re LLC.  [Doc. ## 1-14, 1-15.]

[2] For the sake of clarity, the Court's use of "Defendants" throughout this order will refer only to the NFL and the Chargers, because they are the only two defendants who assert arguments relating to the CBA's preemption of Patrick's claims.

UNITED STATES DISTRICT COURT          **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 23-1069-DMG (SHKx)** | Date | September 21, 2023 |

| | | | |
|---|---|---|---|
| Title | *Aaron Patrick v. National Football League, et al.* | Page | 2 of 10 |

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Patrick is a professional athlete who plays for the Denver Broncos, a member team of the NFL. FAC ¶ 1.  He is a member of the NFL Players Association ("NFLPA") and thus the conditions of his employment are set by a collective bargaining agreement ("CBA") between the NFLPA and the NFL. *See generally* Ntc. of Removal, Ex. 21 (CBA) [Doc. # 1-22].  The NFL Management Council, which is the bargaining representative of the NFL and its 32 member clubs (including Defendant Los Angeles Chargers), is a signatory to the relevant CBA.  *Id.* at 18, 23, 351; *see also* MTD at 7.

On October 17, 2022, Patrick was injured during a football game between the Denver Broncos and the Los Angeles Chargers which occurred at SoFi stadium, the host of the Chargers' home games. FAC ¶ 17.  The injury occurred immediately after Patrick attempted to tackle the Chargers' punt returner, DeAndre Carter, near the 21-yard-line.  *Id.*  During that play, Patrick's momentum carried him off the field and onto the sidelines where, attempting to avoid contact with the NFL's TV Liaison, Moe "Greenhat," his cleats became lodged in the cords and cables connected to the NFL's instant replay monitor and/or the protective mats overlaying them.  *Id.* ¶¶ 1, 17.  As a result of this incident, Patrick tore his anterior cruciate ligament and missed the remainder of the 2022–23 NFL season.  *Id.* ¶ 17.

Patrick now brings various claims of negligence and premises liability under California state law against Defendants, alleging that his injuries were caused by the breach of their duty of reasonable care and their maintenance of a dangerous condition on the premises of SoFi Stadium.  *Id.* ¶¶ 21, 40. Defendants argue that his claims implicate the CBA such that Patrick cannot bring his claims under California tort law.  MTD at 15.[3]

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating the sufficiency of a

---

[3] All page citations herein refer to the page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT      **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | **CV 23-1069-DMG (SHKx)** | | Date | September 21, 2023 |

| | | | | |
|---|---|---|---|---|
| Title | ***Aaron Patrick v. National Football League, et al.*** | | Page | 3 of 10 |

complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

At the 12(b)(6) stage, usually "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (internal citation omitted). District courts may only consider extrinsic documents on a motion to dismiss in certain circumstances. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159–60 (9th Cir. 2012); *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Specifically, taking judicial notice of extrinsic documents can safeguard against possible gamesmanship by a plaintiff who strategically omits relevant documents, such as a relevant collective bargaining agreement that could provide the basis of a preemption defense. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (allowing consideration on a Rule 12(b)(6) motion of a letter extrinsic to the pleadings where letter undermined plaintiff's factual allegations).

"Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *see also Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1192–93 (C.D. Cal. 2015) (analyzing complete preemption defense under Rule 12(b)(6) standard). A failure to exhaust defense should also generally be considered under Rule 12(b)(6) in the "rare event that a failure to exhaust is clear on the face of the complaint."[4] *See Albino v. Baca*, 747 F.3d 1162, 1166, 1171 (9th Cir. 2014) (citing LMRA cases); *see also, e.g.*, *Avila v. Sheet Metal Workers Loc. Union No. 293*, 400 F. Supp. 3d 1044, 1059 (D. Haw. 2019) (applying *Albino v. Baca* framework to motion to dismiss in LMRA case); *Jay v. Serv. Emps. Int'l Union-United Health Care Workers W.*, 203 F. Supp. 3d 1024, 1041 (N.D. Cal. 2016) (same).

**III.**
**DISCUSSION**

**A.**    **Consideration of Extrinsic Evidence**

As a threshold matter, the parties dispute whether this Court may consider the contents of two extrinsic documents in deciding this Rule 12(b)(6) motion: (1) the CBA; and (2) a document titled

---

[4] Defendants reference Rule 12(b)(1) in certain parts of their motion but do not explicitly delineate when they are purportedly briefing the Rule 12(b)(1) standard versus the Rule 12(b)(6) standard. *See* MTD at 10 n.2; MTD Reply at 9. In his MTD Opposition, Patrick identifies these inconsistencies in Defendants' Motion but then incorrectly contends that their failure-to-exhaust argument is properly asserted under Rule 12(b)(1). MTD Opp. at 7, n.2.

UNITED STATES DISTRICT COURT          JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-1069-DMG (SHKx)** | Date | September 21, 2023 |
|---|---|---|---|

| Title | *Aaron Patrick v. National Football League, et al.* | | Page | 4 of 10 |
|---|---|---|---|---|

"2022 Mandatory Practices for the Maintenance of Natural and Synthetic Surfaces of NFL Games." [Doc. ## 1-22, 1-23 ("Field Surfaces Manual").]

In support of their Motion to Dismiss, Defendants filed a Request for Judicial Notice ("RJN") of these two documents, and reference them extensively through their briefing. [Doc. # 18-2.] The authenticity of both documents is undisputed. Decl. of Victor Salcedo ISO Ntc. of Removal ¶¶ 8–9 [Doc. # 1-1]; MTD Opp. at 9 (the authenticity of the CBA and Field Surfaces Manual is "a point Patrick does not contest"); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

On a Rule 12(b)(6) motion, courts "may consider materials incorporated into the complaint *or* matters of public record" without converting the motion into a motion for summary judgment. *See Coto Settlement v. Eisenberg*, 595 F.2d 1031, 1038 (9th Cir. 2010) (emphasis added); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

It is often necessary to consider the contents of a CBA to decide a motion to dismiss based on an argument of complete preemption, which is considered an "independent corollary to the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (internal quotation omitted). If complete preemption is at issue in a Rule 12(b)(6) motion, courts may consider the contents of relevant CBAs to ensure that the complaint is not "drawn to evade federal jurisdiction." *Hall*, 146 F. Supp. 3d at 1192 (citation omitted); *see also Hyles v. Mensing*, 849 F.2d 1213, 1214–15 (9th Cir. 1988) (removal was proper even if "plaintiff's complaint was carefully worded to avoid any direct reference to the collective bargaining agreement that controlled his employment . . . .") (citation omitted).

The Court concludes that taking judicial notice of the CBA is proper in these circumstances, since it is the basis of Defendants' preemption defense. *Cf. Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142 (N.D. Cal. 2019) ("Courts regularly take judicial notice of a CBA in evaluating a motion to dismiss. In particular, courts routinely take judicial notice of the governing CBA where necessary to resolve issues of preemption.") (brackets, citations, and internal quotation omitted).

Patrick argues that even if the CBA is an appropriate subject of judicial notice, the Field Surfaces Manual is not because it is not incorporated by reference into the CBA. MTD Opp. 9–10. He argues that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts in a well-pleaded complaint." *Id.* at 9 (quoting *Khoja v. Orezigen Therapeutics, Inc.*, 899

UNITED STATES DISTRICT COURT          **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-1069-DMG (SHKx)** | | Date | September 21, 2023 |
|---|---|---|---|---|

| Title | *Aaron Patrick v. National Football League, et al.* | | Page | 5 of 10 |
|---|---|---|---|---|

F.3d 988, 1003 (9th Cir. 2018)).  But the Field Surfaces Manual is not cited "in an effort to dispute facts alleged by Patrick." *See* MTD Reply at 9.

Here, the CBA clearly identifies the Field Surfaces Manual, to the extent it could before the document existed in the version before the Court.  Indeed, it dedicates an entire section of Article 39 to establishing a Field Surface Safety & Performance Committee, with detailed instructions for how the committee shall review and update the Field Surfaces Manual to ensure compliance with its terms.  CBA at 238–39.  The CBA was signed on March 20, 2020, and the Field Surfaces Manual is dated June 1, 2022, so it could not be explicitly incorporated by reference as Patrick claims other documents are.  *See* MTD Opp. at 9, n.5.[5]  But it is clear that the document is intended to be incorporated into the CBA as a reference for its mandatory safety standards.  Since Patrick does not contest the authenticity of the Field Surfaces Manual, it is not being used to dispute facts alleged by Patrick, and it is referenced in the CBA, the Court also takes judicial notice of this document for the purpose of deciding whether LMRA preemption applies.

Therefore, the Court **GRANTS** Defendants' RJN and will consider the contents of the CBA and Field Surfaces Manual in deciding Defendants' Rule 12(b)(6) motion.  Since the Court did not rely on any other documents in reaching its decision on the motion to dismiss, the Court **DENIES as moot** the remainder of Defendants' RJN.

**B.      Section 301 LMRA Preemption**

The gravamen of Defendants' motion to dismiss is their contention that Patrick's claims are completely preempted by Section 301 of the LMRA, 29 U.S.C. § 185(a).[6]  *See* MTD at 7.  "Section 301 of the LMRA governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Bonilla v. Starwood Hotels & Resorts Worldwide, Inc.*, 407 F. Supp. 2d 1107, 1111 (C.D. Cal. 2005) (citing *Caterpillar Inc.*, 482 U.S. at 394); *see also Dent v. Nat'l Football League*, 902 F.3d 1109, 1116–17 (9th Cir. 2018).

---

[5] The Court reviewed Patrick's citations to "seventeen separate items" in the CBA and was unable to locate those items on many of the pages to which he cites. *See* MTD Opp. at 9 n.5.

[6] Patrick directs his arguments in his MTR solely towards Defendants NFL and Chargers, as they are the only two defendants "with any nexus to the CBA who contend the claims are 301-preempted."  MTR at 19.  Both the NFL and Chargers are defendants to Patrick's negligence claim, while his premises liability count applies solely to the Chargers, who maintain SoFi Stadium. *Id.* at 11–12; Opp. at 7–8.

UNITED STATES DISTRICT COURT      **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 23-1069-DMG (SHKx)** | Date | September 21, 2023 |

| | | | |
|---|---|---|---|
| Title | ***Aaron Patrick v. National Football League, et al.*** | Page | 6 of 10 |

The Ninth Circuit has established a two-part test for determining whether a cause of action is preempted by Section 301. *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). A court must first determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id.*; *see also Bonilla*, 407 F. Supp. 2d at 1111 ("The LMRA does not preempt an employee's independent, freestanding state rights.") "If the right exists solely as a result of the CBA, then the claim is preempted, and analysis ends there." *Burnside*, 492 F.3d at 1059.

"If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (internal citations omitted). "If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Id.* at 1059–60.

### 1.      Rights Conferred by State Law

First, Defendants argue that Patrick's negligence and premises liability claims are completely preempted because any duty owed "exists, if at all, only by virtue of the CBA." MTD at 17.

Both claims require proof that the NFL and Chargers each owed Patrick some kind of duty of care. The elements of negligence under California law are: (1) existence of a duty; (2) defendant's breach of that duty; (3) plaintiff's injuries were proximately caused by that breach; and (4) damages. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quotation omitted). Premises liability is a type of negligence claim that arises from a breach of landowners' duty to maintain their land in a reasonably safe condition. *See Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001); *Jones v. Awad*, 39 Cal. App. 5th 1200, 1207 (2019). In premises liability cases, the nature of the duty owed depends on "the degree of control conferred by the scope of the ownership interest." *Cody F. v. Falletti*, 92 Cal. App. 4th 1232, 1243 (2001).

According to Defendants, their potential liability to Patrick in these claims solely arises from the CBA because, under California law, "there is no duty of care to protect a sports participant against risks of injury that are inherent in the sport itself." MTD at 17 (quoting *O'Donoghue v. Bear Mtn. Ski Resort*, 30 Cal. App. 4th 188, 192 (1994)); *see also Mehr v. FIFA*, 115 F. Supp. 3d 1035, 1063 (N.D. Cal. 2015) (same); *Knight v. Jewett*, 3 Cal. 4th 296, 315 (1992) (when plaintiff incurred injury in voluntary participation in dangerous sport, the defendant's duty of care must be examined in relation to the nature of the sport).

Whether considering the premises liability claim against the Chargers or the ordinary negligence claim against both Defendants, any duty that Defendants owed to Patrick appears to arise not from state

<table>
<tr><td colspan="2" align="center">UNITED STATES DISTRICT COURT</td><td align="center">JS-6 / REMAND</td></tr>
<tr><td colspan="3" align="center">CENTRAL DISTRICT OF CALIFORNIA</td></tr>
<tr><td colspan="3" align="center">CIVIL MINUTES—GENERAL</td></tr>
</table>

| Case No. | **CV 23-1069-DMG (SHKx)** | Date | September 21, 2023 |
|---|---|---|---|

| Title | *Aaron Patrick v. National Football League, et al.* | Page | 7 of 10 |
|---|---|---|---|

law but is inextricably intertwined with Defendants' duties and obligations under the CBA, as will be discussed further below. The risk of injury arising from collision with objects on the sidelines is an inherent risk of professional football, whether those objects are other players or team staff, benches, coolers, camera equipment, or audiovisual equipment with their attendant cables and cords. *See, e.g.*, *Yarber v. Oakland Unified Sch. Dist.*, 4 Cal. App. 4th 1516, 1520 (1992) (concluding as a matter of law that "the risk of injury is not confined to the boundaries of the [basketball] court . . . Running into obstacles close to the sidelines must be considered an inherent risk of the game.").

The Court therefore concludes that Patrick's rights and claims do not arise from rights conferred upon him by virtue of state law.

### 2.     Substantial Dependence on CBA

Even assuming that there is ambiguity as to whether the accident here was a risk "inherent to football," a state law right is still "substantially dependent" on the terms of a CBA if a court must "interpret" rather than merely "look to" the CBA in resolving the claim. *Burnside*, 481 F.3d at 1060 (internal citation omitted). The distinction "is not always clear or amenable to a bright-line test." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), *as amended* (Aug. 27, 2001). For a claim to be preempted it must "require[] interpretation of a [CBA]," in an "active dispute over the meaning of contract terms," which is more than just a "*hypothetical* connection between the claim and the terms of the CBA." *Dent*, 902 F.3d at 1117–18 (emphasis in original) (quotation marks and citations omitted).

Moreover, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005). "[A] state law claim will only be preempted if it is so 'inextricably intertwined' with a CBA that resolution of the claim will require judicial interpretation of the CBA's terms." *Castillo v. Long Beach Mem'l Med. Ctr.*, 132 F. Supp. 3d 1194, 1198 (C.D. Cal. 2015) (internal citation omitted). The Ninth Circuit has held that, "if the claim is plainly based on state law, [section] 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 691 (citing *Caterpillar*, 482 U.S. at 398–99); *see also Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002) ("reliance on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption.").

Here, resolution of Patrick's claims, and specifically determination of the scope of each defendant's duty and potential liability, would require interpretation of the CBA. Indeed, both sides vehemently dispute whether the mandates of the "Accountability and Care Committee" and "Field Surface Safety and Performance Committee," established by Article 39 of the CBA, would include the relevant standards and conduct that are pertinent to this lawsuit. Article 39 requires "[e]very stadium in

UNITED STATES DISTRICT COURT  **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-1069-DMG (SHKx)** | Date | September 21, 2023 |
|---|---|---|---|

| Title | *Aaron Patrick v. National Football League, et al.* | Page | 8 of 10 |
|---|---|---|---|

which an NFL game is to be played" to comply with the mandatory practices delineated in the Field Surfaces Manual.  CBA at 238.  But each side offers a reasonable, competing interpretation of these documents, in terms of whether either committee was responsible for the configuration of the audiovisual equipment and protective mats in the sideline areas.  The nature of the dispute proves that interpretation of the CBA is required to resolve Patrick's claims.

On one hand, Defendants argue that Article 39's broad language about the committees' responsibility to prevent injuries and "establish and implement safety and performance testing metrics for NFL game-day and practice field surfaces" could fairly be understood to encompass any equipment set up near the sidelines.  *See* MTD at 18–22.  They point to the Field Surfaces Manual's required "visual inspection" of field surfaces, including those "outside the boundary line," to ensure compliance with the committees' safety standards.  *Id.* at 19.  Patrick, on the other hand, interprets the language narrowly, which would cabin its authority to the actual field of play, and "slickness of the artificial grass surface," not the NFL instant replay monitor or the placement of its cables and monitors.  MTD Opp. at 15–16.  These competing broad and narrow readings of the CBA's language are the epitome of a contract interpretation dispute.

Moreover, the CBA's language prescribes mandatory duties, which distinguishes it from Patrick's cited cases "reject[ing]" Article 39 "as a basis for LMRA preemption."  MTD Opp. at 15 (citing *Bush v. v. St. Louis Regional Convention and Sports Complex Authority, et al.*, No. 12-cv-250-JCH, 2016 WL 3125869, at *4 (E.D. Mo. June 3, 2016) ("The [Committee on Player Safety and Welfare] will not have the power to commit or bind either the NFLPA or the Management Council on any issue"); *Stringer v. NFL*, 474 F. Supp. 2d 894, 906 (S.D. Ohio 2007) ("While the NFL is required to give 'serious and thorough consideration' to recommendations of the [Player Safety and Welfare] Committee, the CBA imposes no independent duty on the NFL"); *Green v. Ariz. Cardinals Football Club, LLC*, 21 F. Supp. 3d 1020, 1028, 1028 n.7 (E.D. Mo. 2013) (the Committee on Player Safety and Welfare "will not have the power to bind any of the signatories to the CBA")); MTD at 7.  In those cited cases, there is no mandatory duty imposed, whereas Article 39, section 11 of the CBA specifically states that the Field Surface Safety & Performance Committee "*shall*" review and revise the Field Surfaces Manual, and that "every stadium in which an NFL game is to be played *must* be in compliance with the Committee's revised Mandatory Practices prior to the beginning [of] each NFL season."  CBA at 238 (emphasis added); *see also* MTD Reply at 10 n.2.

Nor does the Court agree with Patrick's interpretation of *Dent* as holding that the CBA impacts only the duties of the NFL, and not the Chargers, in this case.  MTD Opp. at 16 (citing *Dent*, 902 F.3d at 1121).  The statement in *Dent* that "the *teams'* obligations under the CBAs are irrelevant to the question of whether the *NFL* breached an obligation to players by violating the law," 902 F.3d at 1121, was made in the context of a negligence *per se* claim based on the NFL's violation of unwaivable obligations

---

UNITED STATES DISTRICT COURT    **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 23-1069-DMG (SHKx)** | Date | September 21, 2023 |

| | | | |
|---|---|---|---|
| Title | ***Aaron Patrick v. National Football League, et al.*** | Page | 9 of 10 |

under civil and criminal laws regulating prescription drugs.  The facts of this case are very different.  *See* MTD Reply at 16 ("Through the LMRA, Congress has allowed parties to a CBA to negotiate over their guaranteed duties and obligations—including their rights and remedies for breach of those bargained-for provisions.").

Additionally, Patrick presents a baffling argument that Defendants' focus on the CBA's exclusive remedial provisions is "[a]ntithetical to the most basic tenet of LMRA preemption."  MTD Opp. at 16.  Contrary to Patrick's contention, "[t]he fundamental purpose of LMRA preemption is to ensure that 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended for breaches of that agreement,' are 'resolved by reference to uniform law.'"  MTD Reply at 16 (quoting *Allis-Chalmers*, 471 U.S. 202, 211 (1985)).  Patrick's citation to *Brown v. NFL*, 219 F. Supp. 372, 389 (S.D.N.Y. 2002), is inapposite, because the court's conclusion in that case was explicitly based on a CBA that did not have an "all-encompassing arbitration provision" as this one does.  *See* MTD Opp. at 17; MTD at 14 (citing CBA at 273).

For the foregoing reasons, the Court concludes that Patrick's claims against the NFL and the Chargers are completely preempted.  It is necessary to interpret Article 39 of the CBA "to ascertain what duties were accepted by each of the parties and the scope of those duties" with respect to the incident that caused Patrick's injury.  *See Int'l Bhd. Of Elec. Workers v. Hechler*, 481 U.S. 851, 860 (1987).  It is also necessary to interpret the CBA to determine how the Field Committee allocated those duties between the NFL and the member teams.  *Cf. Brown v. Brotman Med. Ctr., Inc.*, 571 Fed. App'x 572, 576 (9th Cir. 2014) (negligence claim preempted where CBA interpretation was required to determine scope of duty).  It is possible, as Patrick avers, that the NFL and Chargers owe different obligations and duties to Patrick, *see* MTD Opp. at 14–15, but neither party's liability can be determined without interpreting the CBA.

**C.**    **Failure to Exhaust Mandatory Grievance Procedures**

Section 301 precludes an employee bound by a CBA from suing before exhausting bargained-for arbitration procedures.  *See Allis-Chalmers*, 417 U.S. at 220 ("We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law.") (internal citation omitted); *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) ("As a general rule, members of a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement. . . .  Failure to utilize the grievance procedures, or to invoke them in a timely manner, bars grievants from pursuing remedies in court.") (citations omitted).

---

UNITED STATES DISTRICT COURT     **JS-6 / REMAND**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-1069-DMG (SHKx)** | Date | September 21, 2023 |
|---|---|---|---|

| Title | *Aaron Patrick v. National Football League, et al.* | Page | 10 of 10 |
|---|---|---|---|

Because it is clear on the face of Patrick's complaint that he has not exhausted mandatory grievance procedures, his claims must be dismissed unless it can be said "with positive assurance" that the arbitration provisions are "not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Defendants' motion to dismiss therefore is **GRANTED without prejudice**.  *See Carr*, 904 F.2d at 1320 (dismissing claims without prejudice for failure to exhaust contractual remedies).

**D.       Remand of State Law Claims Against Non-Moving Defendants**

Since the Court will grant Defendants NFL and Chargers' motion to dismiss in its entirety, it declines to exercise supplemental jurisdiction over the state law claims against the remaining non-moving defendants.  *See* Ntc. of Removal ¶¶ 8–13 (citing the complete preemption of claims against the NFL and the Chargers as the sole basis for removal); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir.), *supplemented*, 121 F.3d 714 (9th Cir. 1997), *as amended* (Oct. 1, 1997) ("[A] a federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c). . . ."); *see also* 28 U.S.C. 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction).

It will therefore exercise its *sua sponte* authority to remand this action against the remaining non-moving defendants to the Los Angeles County Superior Court.

**IV.**
**CONCLUSION**

In light of the foregoing, Defendants NFL and Chargers' motion to dismiss is **GRANTED without prejudice**.  This action against the remaining non-moving defendants is **REMANDED** to Los Angeles County Superior Court.  Patrick's motion to remand is **DENIED as moot**.

**IT IS SO ORDERED.**